ISIDORE NEUMAN, Appellant, *v.* THE NEW YORK MUTUAL SAVINGS AND LOAN ASSOCIATION, Respondent.

*Building loan association — a statement to a borrowing member that it had made fif-*
*teen per cent a year, if false, entitles him to rescind — transfer of its funds.*

A statement to a borrowing member by a mutual building loan association, bound by its articles of association to exercise the utmost good faith towards all of its borrowing members, that it has earned, in the past, fifteen or twenty per cent per annum, is a representation which relates to an existing fact, and if it be false the borrowing member is entitled to rescind his contract — certainly upon paying the sum loaned with the legal rate of interest.

The effect of making good a deficiency in the earnings of a mutual building loan association by taking the amount from funds paid in by stockholders and transferring the sum to a so-called "expense fund" pursuant to a by-law, considered.

APPEAL by the plaintiff, Isidore Neuman, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Oneida on the 11th day of October, 1895, upon the decision of the court rendered after a trial at the Oneida Special Term dismissing his complaint upon the merits.

This action was begun July 23, 1894, to redeem a mortgage exe-

cuted by the plaintiff and Rachel, his wife, May 1, 1891, to the defendant, to secure the payment of $2,600.

In June, 1889, the defendant was incorporated, pursuant to chapter 122 of the Laws of 1851, as amended by chapter 564 of the Laws of 1875, and by paragraph 26 of section 1 of chapter 593 of the Laws of 1886, which statutes were repealed by chapter 689 of the Laws of 1892, and the statutes relating to such associations were codified and became article 5 of the Banking Law (Chap. 37, General Laws) which article was revised by chapter 705 of the Laws of 1894. (2 R. S. [9th ed.] 1108.)

The purposes of this association, as stated in the articles of association, are :

### " ARTICLE II.

### " *Purposes of Association.*

" The purposes for which such association is formed are to accumulate a fund for the purchase of real estate, the erection of buildings or the making of other improvements thereon, and the sale of the same, and the removal of incumbrances therefrom ; to aid its members in acquiring real estate, building houses and making improvements thereon, removing incumbrances therefrom and securing homes upon the lowest and easiest terms, so as to save the sums ordinarily devoted to the payment of rent; to accumulate a fund to be returned to the members who do not obtain advances on their shares, when the funds of the association, to the credit of each share, shall amount to $100 ; to issue certificates of shares of the association, in different series, from time to time, to its members, and to redeem the same ; to encourage industry and frugality and promote thrift and economy among its members by providing a medium through which their savings may be invested so as to yield the largest returns consistent with absolute safety ; and, generally, to transact any and all business incidental to the proper working and management of a Building, Mutual Loan and Accumulating Fund Association, as allowed by the said act and all acts amendatory thereof and supplemental thereto."

January 20, 1891, the defendant's president and secretary signed and verified its annual report for 1890 to the Banking Department of this State (which was its first report, and included all its transactions since it began business), in which it was stated that it began

business July 1, 1889, and that its assets December 31, 1890, were $59,586.73, consisting of the following items :

### " *Assets.*

| | | |
|---|---:|---:|
| " Loans on bond and mortgage | $51,900 | 00 |
| " Loans on other securities | 1,128 | 90 |
| " Real estate | | |
| " Cash on hand and in bank | 4,905 | 61 |
| " Furniture and fixtures | 1,006 | 49 |
| " Other assets — Due from agents | 337 | 08 |
| Bills receivable | 162 | 45 |
| Miscellaneous | 146 | 20 |
| | $59,586 | 73 |

### " *Liabilities.*

| | | |
|---|---:|---:|
| " Due shareholders on stock account | $43,402 | 25 |
| " Accrued earnings due shareholders | 7,787 | 22 |
| " Due for loans | 6,684 | 75 |
| " Surplus | | |
| " Other liabilities, advc'd by directors | 1,712 | 51 |
| | $59,586 | 73 |

### " REPORT FOR THE YEAR ENDING DECEMBER 31, 1890.

### " *Receipts.*

| | | |
|---|---:|---:|
| " Cash on hand January 1, 1890 | $1,468 | 18 |
| " Subscriptions on shares | 32,426 | 65 |
| " ' Paid-up stock ' | 7,390 | 00 |
| " Mortgages redeemed | 6,550 | 00 |
| " Premiums received | 675 | 20 |
| " Interest received | 1,306 | 19 |
| " Fines received | 570 | 54 |
| " Other receipts, Transfer fees | 22 | 25 |
| Withdrawals | 64 | 90 |
| B. receivable | 65 | 00 |
| Advc'd by directors | 1,712 | 51 |
| | $52,251 | 42 |

### " *Disbursements.*

| | | |
|---|---:|---:|
| " Loaned on mortgage | $41,165 | 25 |
| " Shares withdrawn | 714 | 44 |

| | |
|---|---:|
| " Salaries....................................... | $3, 220 00 |
| " Advertising and printing...................... | 979 88 |
| " Rent and other expenses...................... | 1, 244 63 |
| " Other disbursements ........................ | 21 61 |
| " Cash on hand ................................ | 4, 905 61 |
| | $52, 251 42 " |

This report was made upon a blank furnished by the department. The following is a copy of the fiftieth question and answer contained in said report:

" 50. What dividend have you paid during the year? Accrued profits, $7,787 22-100, not yet apportioned to shares."

In 1891 the defendant issued a circular, known in this case as Exhibit No. 18, which contained the following statements, among others:

" Each share of stock has a par value of $100, and a borrower must carry one share of stock for each $100 borrowed. When the association has received from payments and the *pro rata* portion of profits due a share from interest on loans and other sources of revenue a sufficient amount to equal its par value, the share is fully ' matured,' and, if the owner be an investing member, he will, on surrender of his stock, receive the par value in cash; if a borrowing member, his mortgage is released, and the loan and stock on which it was taken shall both be canceled."

" Maturity of Shares.— We cannot absolutely fix the time required for maturing shares. But, with the rate now obtained for loans, a conservative estimate will place the maturity within 8 years.

" Illustration. — Showing profit to. investor, taking ten shares. Maturity value, $1,000. Estimated maturity, 96 months.

| | |
|---|---:|
| " Entrance fee, 10 shares, at $1........................ | $10 |
| " Monthly dues, 60c. per share; 10 shares, $6 per month, 96 months.................................... | 576 |
| " Total cost................................ | $586 |
| " Value at maturity........................ | 1, 000 |
| " Making a profit of... ........................ | $414 " |

On the 18th of April, 1891, the plaintiff in this action subscribed for twenty-six shares in the defendant corporation, and certificate No. 2940 — series 20 — was issued to him on that date, stating that the dues were twenty cents per month. May 1, 1891, the plaintiff obtained a loan from the defendant of $2,600, which he secured to be paid by an assignment of said twenty-six shares, and by his bond, by which he became obligated to pay the sum of $2,600, by paying twenty cents monthly on each of the twenty-six shares ($5.20 per month), together with interest on $2,600, at the rate of six per cent monthly ($13 per month), and also all fines, dues, additional dues of forty cents per share (additional dues amounting to $10.40 per month), and premiums that might become due, as provided in the articles of association. This bond was secured by a mortgage, which was a first lien on real estate owned by the plaintiff. As expenses incident to procuring the loan, the plaintiff paid $79.40 and received $2,520.60 as the net avails of his bond and mortgage. Before the plaintiff became a member of the defendant, its circular, Exhibit No. 18, was shown to him. The court found as facts :

" That, for the purpose of inducing the above-named plaintiff to execute and deliver to defendant the bond and mortgage described in the complaint herein, the above-named defendant, in or about the month of April, 1891, represented and stated to plaintiff that he would have only $2,400.09 to pay on the principal, interest would be only three and one-half to four per cent, and he would have to pay on the mortgage only from six and one-half to seven years, because the defendant had made from fifteen to twenty per cent every year."

" That plaintiff believed said representations to be true, and was induced thereby to become a member of the defendant corporation and a subscriber for twenty-six shares of stock therein, of the ultimate value of one hundred dollars per share, and was thereby induced to execute and deliver to said defendant the bond and mortgage described in the complaint."

The court also found that, prior to March 29, 1894, the plaintiff had paid to the defendant, on account of said shares and mortgage, $998.40, on which day he tendered to the defendant $2,080 in payment of the bond and mortgage, and demanded a satisfaction thereof, and that the defendant refused to accept the tender and demanded

of the defendant $2,409.14 as the amount then due on his said bond and mortgage. This tender has been kept good, and on the 23d of July, 1894, this action was begun to compel the defendant to accept the tender and cancel the bond and mortgage.

*W. T. Dunmore,* for the appellant.

*Frank E. Smith,* for the respondent.

FOLLETT, J. :

The avowed purposes of this corporation, as disclosed by its articles, require it, its trustees and authorized agents, to exercise the utmost good faith towards all of its borrowing members, and, in case representations are made respecting existing conditions or the results of past experience which are untrue and are relied on by the borrower, he becomes entitled to rescind his contract upon paying to the corporation such a sum as is just and equitable.

By the 179th section of the Banking Act (Chap. 37, General Laws) it is provided : " A borrower may repay a loan and all arrears of interest, premium, if any, and fines thereon (or one or more shares thereof) at any stated meeting or at any time (but the by-laws may otherwise provide) ; when not made at a stated meeting, he shall pay interest up to the first stated meeting after such payment, or he may, by a proper notice and directions as to the application, have the withdrawal or holding value of the shares borrowed upon, applied in payment or part payment, as the by-laws shall determine."

Section 9 of the defendant's by-laws provides a scheme for the withdrawal of unpledged installment shares, but our attention has not been called to any provision in the by laws for the payment, before it becomes due, of a loan secured by mortgage and the withdrawal of shares pledged as security for the loan.

This corporation assumes to be organized and conducted on just and equitable principles, to promote the welfare of borrowing members, and that its chief purpose is to enable those who earn small sums to obtain loans to be repaid in small amounts and thus secure homes and pay off liens on their homes by the payment of a low rate of interest. The trustees occupy a fiduciary relation towards the members and are bound to exercise not only vigilance, but the utmost good faith in securing members and in conducting the business.

When this plaintiff secured his loan he paid seventy-nine dollars and forty cents expenses thereof, and between May 1, 1891, the date of the loan, and March 1, 1894, he paid the following sums:

| | |
|---|---:|
| " Entrance fee, $1 per share, 26, .................... | $ 26 00 |
| " Dues, 20 cents per share per mo., 20x34 ............ | 176 80 |
| " Add. dues, 40c., "　"　"　"　" ............. | 353 60 |
| " Int. 6 per cent., 34 months...................... | 442 00 |
| " Amounting in all to...................... | $998 40 " |

Nine hundred and ninety-eight dollars and forty cents paid on this mortgage is equivalent to upwards of thirteen and fifty-five one-hundredths per cent interest per annum on the sum loaned. Interest at six per cent per annum for thirty-four months on $2,600 is $442, which, deducted from the sum paid, would leave $554.40 applicable to the reduction of the principal, provided the amount had been borrowed of an individual.

The defendant in computing the amount which it required the plaintiff to pay to redeem his mortgage makes the sum $2,409.14, as of March 1, 1894, which, deducted from $2,600, leaves $190.86 as the total reduction of the principal during this period, which is equal to $5.613 and a fraction per month, at which rate of reduction it would take upwards of thirty-eight years to redeem this mortgage, assuming that the future prosperity of this corporation will be equal to its past success. With such unexpected results it is apparent, I think, that this inequitable contract should be canceled in case any fact was misrepresented which induced the plaintiff to enter into it. The court found, as before stated, that the defendant represented that it had made from fifteen to twenty per cent every year. This was a representation in respect to an existing fact. If it were false the plaintiff is entitled to rescind his contract, at least, upon paying the sum loaned, with the legal rate of interest.

It is true, as a general rule, that collateral false representations not amounting to warranties, are not actionable unless they relate to existing facts or conditions, but, in case false representations are stated to be made on past experience, and are not expressed as a prediction or prophecy, they may be considered in an action to rescind an executory contract, and in case any of the material statements

on which the representations were based are untrue, a case for relief is made out. When the rule that only representations in respect to existing facts were a ground for relief was established, enterprises like the one under consideration were unknown, and new conditions often require the modification of ancient rules to meet the changed conditions of modern business.

It is not settled in this State that, in an action to be relieved from the performance of an executory contract, a positive statement of results based on mathematical calculations of past experience, if groundless, may not be, in a case like the one at bar, a basis for relieving a party from the performance of such contract entered into on the reliance of the truth of such representations made by persons owing a duty to the person deceived and relating to a subject of which the person making the representations assumes to have superior knowledge and assumes to be an expert in the business to which the representations relate.

In the case at bar the statement of results was not expressed as a prediction or prophecy, but was stated to be based on the past experience of the corporation, and it was not shown, nor was it attempted to be shown, that any unforeseen condition, like a default, unexpected losses, or any other unexpected event, had intervened to prevent the realization of the assured results.

The expenses of the defendant for 1890, as shown by its statement, amount to upwards of $5,000, and its earnings to less than $3,000, showing a deficiency of more than $2,000 for that year, and upon no theory was the statement that it made fifteen to twenty per cent during that year justifiable. The defendant seeks to cover this deficiency by taking $5,444.51 from the funds paid in by the stockholders and transferring that sum to an expense fund, pursuant to a by-law, and then assumes to call this sum earnings. The defendant's expert testified that taking this amount from the fund contributed by shareholders amounted to an assessment of that amount upon their shares, which necessarily reduced the value of their shares by the sum subtracted, and upon what theory this sum, which was contributed by the shareholders and not earned by the moneys which they had paid in, can be called earnings, is not made apparent to this court by the record in this case.

The learned trial court in disposing of this case failed to find

whether the material representation that "defendant had made from fifteen to twenty per cent every year," was true or false. The evidence in this case would not only justify, but, I think, requires a finding that the representation was false, and because of the failure of the trial court to find upon this question, the judgment must be reversed, and a new trial granted, with costs to abide the event.

All concurred.

Judgment reversed and a new trial ordered, with costs abide the event.