(59 App. Div. 275.)

PEOPLE'S BUILDING, LOAN & SAVING ASS'N v. PLATZ et al.

(Supreme Court, Appellate Division, Third Department. March 15, 1901.)

BUILDING ASSOCIATION—ARTICLES—CERTIFICATE—RECITALS—PROSPECTUS—REPRESENTATION—SHARES—TIME OF MATURITY—FRAUD.

The articles of a building association provided that a share therein should be considered as matured when dividends thereon, together with the shareholder's dues, should amount to $100; and that a shareholder might be advanced the matured value of his stock if secured by a mortgage, the same to be paid by the dues and dividends of the borrower. Agents of the association told the shareholder that he might borrow the maturity value of his stock, and that 60 monthly payments of dues and certain interest and premiums would pay the mortgage; and he was shown a prospectus, which stated that the association was the only one that wrote a definite contract specifying the number of payments required on each share, and inviting attention to the certificate issued, which stated that $100 would be paid on each share at the end of 5 years. The shareholder borrowed the value of his stock, giving a mortgage conditioned that it should be paid when he had paid dues, etc., for such time, or would secure the association the payment of $100 on each share. *Held*,

that 60 monthly payments, with interest and premiums, satisfied the mortgage, since the statements in the prospectus and certificate, which assumed to state the contract, led the shareholder to believe his contract such as stated by the agents, notwithstanding the articles of association.

Appeal from trial term, Albany county.

Action by the People's Building, Loan & Saving Association against Nicholas B. Platz and another. From a judgment in favor of plaintiff, defendants appeal. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, and SMITH, JJ.

James H. Berns, Isaiah Fellows, Jr., and E. Countryman, for appellants.

Chester M. Elliott, for respondent.

PARKER, P. J. After a careful study of the articles of association and by-laws of the plaintiff, and the certificate issued by it, I am satisfied that the defendant had no idea of the contract into which he really entered when he executed the mortgage in question. The situation of the respective parties at that time was substantially as follows: The plaintiff is a loan and saving association, organized under chapter 122 of the Laws of 1851, and the acts amendatory thereof. As fixed by its articles of association, its capital is $5,000,000, consisting of 50,000 shares of the par value of $100 each. Its scheme is to have each purchaser pay for stock issued to him the sum of $1 per month on each share purchased; also an entrance fee of $1 on each share; also a quarterly installment of 25 cents on each of such shares; also a transfer fee and cancellation fee of $1 for every transfer or cancellation of his shares. Also certain fines and penalties are provided for, and forfeiture of amounts paid on shares of stock in the event of default by the purchasers. The entrance fees, quarterly installments, transfer and cancellation fees, constituted a current fund, out of which expenses and salaries were paid. The fines and penalties, the various sums forfeited to the company, and the monthly dues paid by such purchasers constituted a fund from which loans were made and dividends paid, and into this fund also went such interest and premiums as were received upon loans made. The dividends were to be declared whenever, in the judgment of the directors, the fund was sufficient to warrant it. Whenever the monthly dues paid by a purchaser and the amount of the dividends declared upon his share of stock equaled the sum of $100, such shares was considered matured, and was canceled, and the purchaser thereupon became entitled to be paid by the company the full sum of $100 in lieu of it, providing, of course, he had in the meantime made no default in his payments and incurred no forfeitures. There was also a further provision in such articles by which a shareholder could, at the discretion of the directors, be advanced the full amount of his share of stock, provided he secured the same by a bond and mortgage upon real estate. The terms of payment of such bond and mortgage are not stated in the articles of association, except that they are to be as "prescribed by these articles of association and the by-laws thereof; which mortgage, when paid out of the dues and ac-

cruing dividends, shall be a full and complete redemption and satisfaction of the shares of capital stock held by the shareholder so mortgaging said property." In the by-laws it was provided that upon such a mortgage should be paid interest at the rate of 5 per cent., and also a premium of 5 per cent. per annum, to be paid monthly. Thus, if this defendant had carefully and intelligently studied these articles, he could probably have discovered that in purchasing his 50 shares of stock he had acquired the privilege of paying $50 per month for an indefinite time, and until, in the discretion of the directors, dividends enough had been earned to bring such payments up to $100 per share; and also, by including the by-laws within his studies, he would probably have discovered that he was to pay 5 per cent. interest annually on the amount advanced him, and a bonus or premium of 5 per cent. additional annually, for the privilege of borrowing from that association, until, perchance, the dividends in the course of years, and in the discretion of the directors, would bring the amount of his monthly installments paid up to $100 per share. But the situation as the defendant understood it was quite different. In November, 1889, he purchased five shares of such stock, and took a certificate from the association for the same. Such certificate constitutes him a shareholder of the association, states that he holds five shares thereof, and in express terms agrees on the part of the association to pay him the sum of $100 for each of said shares at the end of five years from the date thereof. It further provides that in case of his death before the expiration of such term it will pay a sum of money equal to the amount of monthly installments paid on said shares, together with all dividends accrued thereon. Nowhere is it intimated that only the monthly installments paid and accrued dividends are to be paid on the five shares if he lives and pays his monthly installments for five years, but a plain distinction to that effect is made in case he dies, and thus stops paying, before the expiration of five years. It is, however, provided in such certificate that the articles of association and by-laws are thereby made a part of the contract. Save what is concealed, rather than expressed, in that phrase, this certificate is a direct contract that the association will pay the par value of each share after 60 monthly payments by the shareholder shall have been made. Subsequently 45 other shares were purchased by the defendant—10 at one time and 35 at another—by certificates in all respects expressed as the one just referred to. These subsequent shares were taken out on the suggestion of the general agents of the association that, if he held 50 shares, he could have advanced to him their par value, if he would secure them by a mortgage on his property. These agents also informed him that the annual interest which he would have to pay upon such amount would be 2½ per cent. only; that the mortgage was taken only as security that he keep up the monthly installments accruing on his stock; and that, if he would regularly pay the $50 due monthly upon his 50 shares, the association would, at the end of 60 such payments, take up his certificates of stock, and cancel his mortgage. At the same time a prospectus of the association was shown to the defendant by these agents, in which, among other things, it was stated that this

association is the only one that writes a definite contract specifying the exact number of payments that will be required from the members on each share of stock, and also takes a mortgage for a definite period; and purchasers are asked to bear that in mind, and read carefully the certificate issued. In connection with this, a statement issued by the association, illustrating the result to a borrower of $1,000 for five years, was shown the defendant, in which $1,000 is credited to such borrower on his 10 shares at the end of five years.

The trial judge made no finding upon the question whether or not such statements were made by the plaintiff and relied upon by the defendant, but from the evidence before us it cannot be doubted but that they were. From these representations, made by the agents, and so distinctly corroborated by the certificates and prospectus of the association, the defendant undoubtedly did in fact believe that he assumed no greater obligation than to pay the specified monthly sums for a period of 60 months. There is no expression in the mortgage that distinctly or intelligibly contradicts this belief. The term therein stated is "a period that will secure the payment of the full sum of $100 on each of the mortgagor's shares hereby secured to be paid." In view of the fact that not only the statements of the agents, but also the certificate under which he held such shares, declared that they would be satisfied by the payment of 60 monthly installments, such a provision in the mortgage was not calculated to give him any different impression. Relying upon these statements, the defendant, being then about to build, and needing the money, on August 30, 1890, executed a bond and mortgage to the association, conditioned substantially as follows: That if the said defendant should pay to the said association the sum of $5,000 in the manner following, viz. $50 contribution of principal, and $20.85 interest, and $20.85 premium each and every month from the date thereof for "such term as will secure the" association "the payment of the full sum of $100 on each and every one of the mortgagor's shares hereby secured to be paid, and also pay all dues, fines, penalties," etc., "pursuant to the articles of association and the by-laws thereof, then this obligation to be void," etc. The defendant regularly and monthly paid the installments and sums due upon his said 50 shares until 60 monthly payments had been made thereon, and during that period also paid the interest and premiums required by the mortgage. The whole amount so paid amounted to $5,573.30, in which there is not included any dividend. He then stopped payments, and offered to surrender to the association his 50 shares of stock, and demanded that his mortgage be discharged. The plaintiff, however, claiming that the mortgage was to secure not merely the payment of the monthly installments for five years, but for so long a time as would, with the dividends accrued, bring each of his shares up to $100, and that by ceasing to pay before that was accomplished he had become liable to certain fines and penalties, insisted that there was still due and secured by such mortgage the sum of $4,999.38, and it is for such sum that it is now seeking to foreclose the mortgage.

Thus it appears that the real question between the parties is

whether or not the defendant must continue to pay the sums specified for a longer period than 60 months; whether or not, that being the actual contract made between the defendant and the association, the mortgage should not be so construed; and whether or not, under the circumstances of this case, the plaintiff can lawfully insist that the defendant is in default, and therefore liable for the large amount of fines and penalties as above claimed. It has been frequently held that in contracting with associations similar to this the articles of association and the by-laws are to be deemed a part of the contract made. And in O'Malley v. Association, 92 Hun, 572, 36 N. Y. Supp. 1016, a shareholder of a certificate issued by this very association, and in precisely the same terms, was not allowed to recover at the expiration of 60 monthly payments the full par value of the shares which he held. Substantially, it was there held that he must be deemed to have contracted with knowledge of the general plan specified in the articles and by-laws, and that the fixed term in the certificate, in view of such plan, should be construed as an estimated time, merely, for the maturing of the certificate. But in the case before us I am inclined to think that there are other features and equities that should not be overlooked. Concede that the articles and by-laws are written into both the certificate and mortgage in question, and that, being therein, they make it plain to one who reads them that the period of five years is not the absolute extent to which the shareholder is required to pay. Yet, if a mortgagor is induced by the fraudulent statements of the mortgagee to omit reading the full text of the written contract, and provisions are incorporated in the mortgage by the mortgagee which are in conflict with the agreement that is in fact made between the parties, the mortgagee will not be permitted to derive a benefit from the terms so fraudulently interpolated. Institution v. Burdick, 87 N. Y. 40, 47; Kirchner v. Machine Co., 135 N. Y. 189, 31 N. E. 1104. Thus in this case the defendant did not study the provisions of the articles and by-laws. The distinct statement in the certificate and in the prospectus of the association that it was the only association that fixed a definite term during which the shareholder was required to pay, and the only association that takes a mortgage for a definite period, and the request that purchasers would observe it, was equivalent to a statement that its articles and by-laws were in harmony with that plan. It was equivalent to telling the defendant that under its articles and by-laws it was authorized to contract for a fixed time, and that it had, therefore and thereunder, fixed upon the term of five years as the limit. And the defendant, trusting to that statement, and being thereby diverted from reading that part of the contract, assumed that there was nothing in the mortgage which he signed conflicting with the parol agreement made between himself and the association's agents as to what the mortgage and its terms should be. Defendant did not know of the plan and scheme outlined by the articles of association and the by-laws, because he had never studied them. He did not study them because the plaintiff (so far as the point in question is concerned) substantially assumed to state them. By a false statement, evi-

dently made for the purpose of inducing the defendant to purchase stock, and give a mortgage for advances thereon, the plaintiff has acquired the mortgage in question, and now seeks to enforce it as a contract much more burdensome upon the defendant than he ever knowingly assumed. I am of the opinion that the plaintiff should not have the benefit of the advantages which it thus secured. By its false statements, evidently made for that purpose, it deceived the defendant into supposing he could discharge his mortgage by paying for 60 continuous months the sums mentioned in his certificate. Having procured the mortgage by such deceit, it should not be allowed to enforce it for anything more than it represented it to be.

For this reason the judgment must be reversed, and a new trial granted, with costs to abide the event. All concur; SMITH, J., in result.