EAGLE SAVINGS AND LOAN COMPANY, Respondent, *v.* HENRY F. BEAKEY, and NELLIE A. BEAKEY, Appellants.

*Contract — usury — bonus — maturing shares.*

Appeal by the defendants, Henry F. Beakey and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 10th day of July, 1913, upon the decision of the court after a trial at the Kings County Special Term.

Judgment affirmed, with costs, on the opinion of Mr. Justice Blackmar at. Special Term. Jenks, P. J., Burr, Carr, Rich and Stapleton, JJ., concurred.

The following is the opinion of the court below:

BLACKMAR, J.: The contract relation between the plaintiff and defendant was authorized by the statutes of the State of New York. This included the payment by the defendant of a bonus of $950 on his loan and an additional one per cent upon the first mortgage without violating the Usury Law. His agreement was to pay installments upon the shares subscribed for by him until such time as such installments together with the dividends allotted to him by the company should equal the amount of the shares subscribed for, and that when the shares subscribed for were fully paid they should be applied to the payment or discharge of the mortgage. These provisions are plainly set forth in the bond, mortgage, certificate of stock and in the articles of association of the plaintiff, which are all part of the contract. The defendant claims that it was part of the contract that he should receive fifteen per centum a year dividends upon the payments of installments upon his subscription to the capital stock, and that thereby the stock would be matured and the mortgage paid within sixteen years. There are indications upon the face of the papers that the parties believe that the shares would be matured in sixteen years. The articles of association provide that there may be issued to borrowing members only, variations of class A shares to be termed class A 8, class A 16 and class A 21, upon which the monthly dues should be fifty cents, twelve and one-half cents and five cents. The shares issued to the defendant were called class A 16 shares. The figures "16" undoubtedly refer to the contemplated period for the maturity of the shares. In addition the defendant was required to and did sign an application in which he offered to pay for the loan a premium of twenty-five cents a month upon each share as provided in the articles of association for 193 months. One hundred and ninety-three months is sixteen years and one month, and, although this provision referred to the payments of premiums and not to the maturity of the shares, it indirectly indicates that the shares were to be matured in sixteen years. I find also as a fact that the defendant was told by an officer of the company with whom the negotiations were had that the shares would be matured and the loan paid in sixteen years. I have not the slightest doubt that this statement was made to the defendant. It is highly improbable that the defendant would have entered into an arrangement that involved the payment of $950 as a premium or bonus,

and which increased the rate of interest on the existing mortgage from five to six per centum unless moved by some consideration of benefit. The company was then paying sixteen per cent dividends upon the installments paid by the subscribers to the capital stock. If this rate of dividends was maintained the shares would mature in sixteen years. · Considering the testimony of the defendant and Secretary Wakeman in the light of this probability, I have no hesitancy in deciding that the defendant was told that his shares would mature in sixteen years. It becomes then a question of law whether on all these facts the defendant is entitled to relief. The contract between the parties was in writing. It was complete upon its face and left no opportunity for the application of the rule that if the contract does not cover all the relations between the parties parol evidence may be admitted to supplement it. The contract provided that the payments should continue until the amounts thereof, together with the dividends, should equal the face of the shares. It does not guarantee any amount of dividends or specify the time when all the shares will be matured. In this respect it differs from *Vought* v. *Eastern Building & Loan Assn.* (172 N. Y. 508) and *People's Building, L. & S. Assn.* v. *Platz* (59 App. Div. 275). The elements of the agreement, although involved, were not probably stated in such a way as to be blind and they were authorized by the statute. The case differs from *Nellis* v. *Western Life Indemnity Company* (207 N. Y. 320), cited by defendant's counsel, for in that case there was a plain agreement by the insurance company to pay certain amounts upon death, and this was attempted to be avoided by the blindly written and ambiguous clauses contained in another part of the policy. In this case, however, the relations are expressed as plainly as the involved nature of the agreement permitted. I reach the conclusion, therefore, that the statement made to the defendant when he took out the loan to the effect that the shares would mature in sixteen years is not a part of the contract. Neither can I hold that this was such a fraudulent representation as avoids the contract. It is a fact that at the time the loan was made the company was paying dividends of sixteen per cent, and the ensuing year it paid fifteen per cent. If this rate had continued the shares would have matured in sixteen years. The witness for the defendant, Wakeman, who was the secretary of the company, testified that he had no intention of deceiving the defendant, but that he believed that it would continue to pay fifteen per cent until the maturity of the shares. As a matter of fact it did pay fifteen per cent until and including the year 1908, except that in three of the years it paid fourteen per cent. The statement made by the secretary was a forecast of future conditions. It was a prediction or a prophecy. It involved no misrepresentations stated to be based upon past experience, as was the case in *Neuman* v. *New York Mutual Savings Association* (17 App. Div. 72). It was made without the intent to deceive, and falls within that class of statements which involve matters of opinion and which cannot be made the basis of a claim of fraud. A sanguine mind might believe that such predictions would be fulfilled, but one accustomed to test opinions in the light of reason would have seen their inherent improbability, for the total earnings of the asso-

ciation were drawn from payments made by its members, and if one gained another must lose; and since all premiums, which were the great source of the earnings of the association, came from borrowing members, the probability would be that in the long run the borrowing members would lose. The great diminution in the earnings of the company during the last five years which has prevented the maturing of the shares is due to the fact that the Legislature passed a statute limiting the amount of the premiums which could be charged for loans.* I reach the conclusion, therefore, that the statement made by the officer of the company at the time the loan was made is not a part of the contract, neither was it a fraudulent representation which authorized the defendant to rescind. Judgment must follow for the plaintiff, with costs. In the other action, in which this defendant is plaintiff and this plaintiff is defendant, judgment must be for the defendant, dismissing the complaint upon the merits, but without costs, as I think that one bill of costs is amply sufficient.

---

* See Laws of 1910, chap. 126, amdg. Banking Law (Consol. Laws, chap. 2; Laws of 1909, chap. 10), art. 6.— [REP.