SAMUEL SLUTZKIN and Others, Respondents, *v.* GERHARD & HEY, INC., Appellant.

First Department, December 2, 1921.

Bills of lading — cause of action for common-law fraud in issuance of bill of lading and cause based on violation of statutes properly joined — complaint shows completed sale and not offer by consignor — if death of person to be notified terminated relationship then seller could sell to any one — payment of draft by widow of person to be notified and transfer of bill to plaintiff passed title — bill of lading was negotiable — statement to notify named person did not affect negotiability — defendant was common carrier — defendant estopped from disputing title to bill of lading.

A cause of action predicated upon common-law fraud in the issuance of a bill of lading by the defendant which falsely represented that the defendant had received from a third person certain goods is properly joined with another cause of action based upon the alleged fraudulent issuance of the same bill of lading in violation of certain State and Federal statutes which prohibit the issuance of bills of lading for goods not received and their negotiation when the goods are not in the possession of the carrier.

Complaint in an action based on fraud in the issuance of a bill of lading examined, and *held*, to be sufficient where it alleged that the defendant

issued its negotiable bill of lading whereby it represented that it had received from a third person certain merchandise to be transported by steamer to Russia and to be delivered at Moscow to " order or to his or their assigns;" that said bill of lading specified the name of the person to be notified and that application for delivery was to be made to the defendant's general agent in Russia; that the defendant secured a certificate of origin for said merchandise from the deputy collector of the port of New York; that at the time the bill of lading was issued none of the property had been received from the alleged consignor or any one else; that said bill was issued pursuant to a fraudulent agreement between the defendant and the alleged consignor; that subsequent thereto the person who was to be notified died and his widow paid the draft attached to the bill of lading and received from the bank at Moscow, Russia, the bill of lading as well as the certificate of origin and a receipted invoice for the merchandise which she afterwards sold and transferred to the plaintiffs to whom, on their application, the defendant's Russian agent indorsed the bill; that the payments for said bill of lading and invoice were made in good faith and in reliance upon the truth of the representations contained in the bill of lading and the certificate of origin, and that the acts and representations of the defendant and the consignor were in violation of certain State and Federal statutes, which prohibit the issuance of bills of lading for goods not received and their negotiation when the goods are not in the possession of the carrier.

The allegations of the complaint set forth a successful consummation of a fraud perpetrated by the consignor and the defendant as a result of which they obtained by the delivery of a fictitious bill of lading falsely purporting to cover certain described merchandise a large sum of money representing the stated value thereof and show a completed sale, and not a mere offer of sale.

If the death of a person to be notified terminated the relationship of the original purposed purchaser to the seller then the latter would have the right to sell the goods represented by the bill of lading to the widow or any one else whose title thereto would then become unassailable, and so the plaintiff acquired good title through the bill of lading to the goods represented thereby.

Moreover, the facts alleged in the complaint clearly establish that the bill of lading in question was a negotiable one, since the goods were not consigned to a particular individual and the words " non-negotiable " or " not negotiable " were not written on the face of the bill as required by section 194 of the Personal Property Law.

The fact that the bill of lading contained a statement that a certain person was to be notified of the arrival of the goods did not limit its negotiability nor constitute notice to a purchaser of the bill of any rights or equities of such person in the goods.

The defendant was a common carrier, for the rule is that where persons who call themselves forwarders are so conducting their business as to lead the public to believe that they are carriers and are employed as carriers

to ship goods without any knowledge of their true character the liability of a carrier will attach to them.

The fraudulent issuance of the bill of lading by the defendant, acting in concert with the consignor, the payment of the alleged full value of the merchandise described in the bill, the acceptance and retention by the consignor of the money thus paid in consummation of the alleged fraud and the various indorsements on the bill of lading by the defendant and its agents completely estopped the latter from raising any question of plaintiff's title to the bill of lading.

APPEAL by the defendant, Gerhard & Hey, Inc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 9th day of April, 1921, granting plaintiffs' motion for judgment on the pleadings and overruling defendant's demurrer.

*Strong & Mellen* [*Chase Mellen* of counsel], for the appellant.

*Weschler & Kohn* [*J. Charles Weschler* of counsel], for the respondents.

GREENBAUM, J.:

The complaint asserts two causes of action arising out of the same transaction. The first is predicated upon a common-law count of fraud in the issuance of a bill of lading by the defendant, which falsely represented that the defendant had received from the Quaker City Morocco Company eighty cases of glazed kid to be transported by the steamship *Kiafuku Maru* to Moscow, Russia, and to be delivered to " order or to his or their assigns." The second cause of action is for like damages, based upon the alleged fraudulent issuance of the same bill of lading in violation of certain State and Federal statutes, which prohibit the issuance of bills of lading for goods not received and their negotiation when the goods are not in the possession of the carrier.

The defendant demurred upon two grounds: *First*, that a cause of action on contract has been improperly united with one in tort; and *secondly*, that the complaint did not state facts sufficient to constitute a cause of action.

As to the first ground of demurrer appellant has submitted no argument. It is only necessary to say that both causes

of action are based upon deceit, resulting from the alleged fraudulent issue of the same bill of lading and hence were properly united in the complaint.

The only question to be discussed is the sufficiency of the complaint.

As to the first cause of action, the complaint which is voluminous, alleges: That on the 11th day of August, 1917, the defendant Gerhard & Hey, Inc., a New York corporation, issued its negotiable or order bill of lading, a copy of which is annexed to the complaint and marked " A; " that in and by this bill of lading, the defendant represented that it had received at Philadelphia from the Quaker City Morocco Company eighty cases of glazed kid to be transported by the steamer *Kiafuku Maru* or other available steamer, to the port of Kobe and thence by conveyance to Moscow and to be delivered at that place to " order or to his or their assigns; " that the party to be notified was J. A. Borenstein of Moscow, Russia, and that application for delivery was to be made to " Gerhard & Hey Co., Ltd., of Moscow, Russia," a corporation, owned and controlled by the defendant and its general agent in Russia, for the transaction of business for the defendant and which maintained an office at Moscow, Russia, for that purpose, and that the freight had been prepaid to Kobe; that on the 15th day of August, 1917, the defendant caused an application to be made to the deputy collector of the port of New York, for a certificate of origin for eighty cases of glazed kid bearing certain specified marks and numbers which it thereby caused to be represented, were shipped or to be shipped on the steamship *Kiafuku Maru* consigned to J. A. Borenstein at Moscow as a product of the United States of America, and that upon such application a certificate of origin covering said merchandise was accordingly issued, an unsigned copy thereof being annexed to the complaint as Exhibit B; that at the time the bill of lading was issued, neither eighty cases of glazed kid nor any part thereof had been received from the Quaker City Morocco Company, or any one else and that it had been fraudulently agreed between the defendant and the Quaker City Morocco Company that the defendant would issue a bill of lading, although the goods had not been received by it for shipment on the steamer

*Kiafuku Maru* or on any other steamer; that thereafter the defendant delivered the bill of lading and certificate of origin to the Quaker City Morocco Company; that the Quaker City Morocco Company indorsed said bill of lading as follows: "Quaker City Morocco Co., J. B. Hamilton, Secretary and Treasurer," and delivered to the Philadelphia National Bank at Philadelphia, such bill of lading so indorsed and the certificate of origin, together with a sight draft for the sum of 628,234 rubles, which at the then current rate of exchange, amounted in American money to $118,665, together with an invoice for $118,665, purporting to be the purchase price of said eighty cases of glazed kid, with instructions to forward the same for collection to the Industrial Bank of Moscow, Russia; that the said Philadelphia National Bank thereupon forwarded such papers to said bank at Moscow and directed the said Moscow Bank upon payment of the said sum of $118,665 to deliver said bill of lading so indorsed, said certificate of origin and said invoice duly receipted as to payment to whosoever would pay the said draft in accordance with the law merchant.

It is further alleged that the defendant caused said bill of lading to be issued although the merchandise therein described had never been received by it, with full knowledge that it had not been received and that it was not intended to ship the same on any steamer, and with full knowledge that the Quaker City Morocco Company intended to forward the bill of lading and other documents aforementioned for the purpose of obtaining payment from J. A. Borenstein or Necha Borenstein or any holder of such bill of lading and with knowledge that the amount of the invoice, $118,665, would be paid in reliance upon the representations contained in said bill of lading, said certificate of origin and invoice, that said eighty cases of glazed kid had been received by the defendant and had been shipped and would be delivered in Moscow, Russia, to the lawful holder of said bill of lading and with like knowledge that any person seeing said bill of lading, certificate of origin, draft and invoice would be misled into believing that said bill of lading was issued honestly and in good faith and that the representations contained in said bill of lading, that the goods had been received and shipped and

were to be delivered to the holder of the said bill of lading, were true and that such person in the ordinary course of business, would rely upon and believe the said representations and would be induced to purchase said bill of lading.

That thereafter and before the bills of lading' and other papers were received in Russia, J. A. Borenstein died intestate, leaving Necha Borenstein, his widow, as his heir at law, and that under the laws of Russia, upon his death, all his goods and property belonged to Necha Borenstein and that she succeeded to his business and continued to conduct the same and that under the laws of Russia she inherited all the property and effects of J. A. Borenstein.

That on or about the 11th day of December, 1917, the bill of lading and other documents were received by the Moscow Industrial Bank which notified Necha Borenstein that it had received the bill of lading and documents aforesaid, and that on the 11th day of December, 1917, Necha Borenstein paid to the Industrial Bank of Moscow the sum of $118,665 and received from the bank that bill of lading as well as the certificate of origin and a receipted invoice for the merchandise.

That Necha Borenstein made such payments in good faith and relying upon the truth of the representations as to the receipt and shipment of such goods contained in such bill of lading and upon the representations that the bill had been issued for merchandise actually received by the defendant for shipment and upon the description of the said goods.

That thereafter Necha Borenstein sold and transferred the bill to the plaintiffs and negotiated the same and delivered it to these plaintiffs in blank and delivered the certificate of origin and invoice to the plaintiffs and sold, assigned and transferred to the plaintiffs eighty cases of glazed kid referred to in the bill of lading and that the plaintiffs are and ever since have been the owners and holders of said bill and of eighty cases of glazed kid and have not transferred or indorsed said bill of lading and have not sold, resold, assigned or retransferred the same and that the plaintiffs paid in consideration thereof a sum far in excess of $188,665.

That the said bill of lading contained the following clause: " Apply for delivery to the Gerhard & Hey Co., Ltd., Moscow," and that at the time of said payment by the plaintiffs to

Necha Borenstein and said transfer of the bill of lading, plaintiffs applied to said Gerhard & Hey Co., Ltd., who indorsed said bill of lading as follows:

" To the order of Messrs. I Slutzkin & Sons,
" Gerhard & Hey Co., Ltd.
" Shipping storage advances
" Moscow office,
" S. Gottensaurer."

It was also alleged that the plaintiffs satisfied the lawful liens for freight, storage, demurrage and terminal charges and all expenses for the preservation of the goods and paid the same " although in truth and in fact no charges had been incurred."

The complaint further alleges that the aforesaid payments were made in good faith and in reliance upon the truth of the representations contained in the bill of lading and the certificate of origin and in ignorance of the fact that the bill of lading had been issued by the defendant without any of the goods therein mentioned being received by it from the Quaker City Morocco Company. Then follow allegations of a demand for the said eighty cases of glazed kid; that no part thereof has been delivered; that plaintiffs made an offer to surrender the said bill of lading properly indorsed; that the plaintiffs were ready, able and willing to sign an acknowledgment when such goods would be delivered, if such signature and acknowledgment were requested; that defendant had full knowledge of the fact that said goods were not shipped and were not to be shipped and that defendant caused such bill of lading to be indorsed by its agent, knowing that none of the goods were in its possession or control; that all of the aforementioned acts were committed with intent to cheat and defraud the consignees named in said bill of lading and any subsequent owner or holder thereof including these plaintiffs, " as a result of a conspiracy between the defendant and the said Quaker City Morocco Company for the purpose of cheating and defrauding " any holder of such bill of lading.

The second cause of action substantially repeats all the material allegations contained in the first cause of action and in addition alleges that the said bill of lading was issued with full knowledge that it contained false statements as to the

receipt of such goods and as to the forwarding and shipment thereof and that these acts and representations were in violation of sections 230, 231, 234 and 237 of chapter 45 of the Laws of 1909* of the State of New York, known as the Personal Property Law, and section 360 of chapter 88 of the Laws of 1909 of the State of New York, known as the Penal Law, and section 41, chapter 415, act of Congress of August 29, 1916, 39 Statutes at Large of the United States, 538.†

The learned counsel for the appellant contends that the facts set forth in the complaint establish that the business relations of the Quaker City Morocco Company were only with J. A. Borenstein, whose death terminated the relations of the parties as proposed purchaser and seller and that his widow, Necha Borenstein, did not succeed to her deceased husband's rights under the contract and that this court cannot take judicial cognizance of the Russian law in the absence of allegations showing that under Russian law the sole heir at law of the purchaser may indorse or transfer a negotiable bill of lading in behalf of the intestate.

Appellant also relies upon the principle of law that the death of either party to a proposed contract depending upon an offer and acceptance revokes the offer and that the heirs or personal representatives of the offeree cannot accept the offer in place of the deceased unless a new offer is made to the consignor. (Citing 9 Cyc. 293; 13 C. J. 298.)

The allegations of the complaint set forth the successful consummation of a fraud concocted by the consignor and the defendant, as a result of which they obtained by the delivery of a fictitious bill of lading falsely purporting to cover certain described merchandise, a large sum of money representing the stated value of the merchandise claimed to have been shipped and certain charges and claims connected therewith, which had never been paid or incurred. Assuredly facts which show a completed sale have nothing to do with a proposed sale, which would only ripen into a sale upon the acceptance of an offer, nor with the Russian law as to the rights of an heir at law of a deceased party to a contract of sale. If death terminated the relationship of the original

---

* Added by Laws of 1911, chap. 248.— [REP.

† See 39 U. S. Stat. at Large, 544, § 41.— [REP.

proposed purchaser to the seller then the latter would have the right to sell the goods represented by the bill of lading to the widow or any one else whose title thereto would then become unassailable.

Moreover the facts alleged in the complaint clearly indicate that the bill of lading in question was a negotiable one. Although J. A. Borenstein is mentioned in an invoice as the purchaser the bill of lading does not state that the goods were consigned to him, nor to any particular individual. He was merely referred to as the party to be notified. The fact that the bill contains such a statement does not limit its negotiability nor does it constitute notice to a purchaser of the bill of any rights or equities of such person in the goods.

The following sections of the Personal Property Law (as added by Laws of 1911, chap. 248) conclusively establish that the bill of lading was a negotiable instrument.

Section 239 of the Personal Property Law defines " consignee " as " the person named in the bill as the person to whom delivery of the goods is to be made."

Section 194 provides: " A non-negotiable bill shall have placed plainly upon its face by the carrier issuing it ' non-negotiable ' or ' not negotiable.' * * *."

An inspection of the copy of the bill of lading annexed to the complaint shows that there is nothing upon its face indicating that it was " non-negotiable " or " not negotiable."

Section 195 is as follows:

" § 195. Insertion of name of person to be notified. The insertion in a negotiable bill of the name of a person to be notified of the arrival of the goods shall not limit the negotiability of the bill, or constitute notice to a purchaser thereof of any rights or equities of such person in the goods."

Section 197 obligates a carrier in the absence of some lawful excuse, to deliver goods upon a demand made either by the consignee named in the bill for the goods or *if the bill is negotiable*, by *the holder thereof* (italics ours), provided that such demand is accompanied by such conditions as were complied with in the case under review. A substantially similar provision is found in the Federal Bills of Lading Act, which took effect January 1, 1917 (39 U. S. Stat. at Large, 538, Sixty-fourth Congress, Session I, 1916, chap. 415). The

sections of the State act cited herein, with the exception of section 237, are in substance found in the Federal act. (See 39 U. S. Stat. at Large, 539, §§ 6, 7, 8; Id. 544, § 41; Id. 545, § 42.) The Federal act does not contain any provision similar to said section 237 of the State act. Similar provisions are also contained in the Pennsylvania Uniform Bills of Lading Act. (See Penn. Laws of 1911, p. 839, §§ 8, 9, 11; Id. p. 847, §§ 44, 45; Id. p. 848, §§ 48, 51, 53; Pa. St. 1920, §§ 1066, 1067, 1069, 1102, 1103, 1106, 1109, 1111.) It is alleged in the complaint that upon the payment to the Moscow Bank of the sum of $118,665 the bank was directed " to deliver the said bill of lading so endorsed and said certificate of origin and said invoice duly receipted as to payment to whomsoever would pay the said draft in accordance with the law merchant."

Discussing the second cause of action, the appellant urges that the defendant is not a common carrier, but a forwarding agent and that the provisions of the Personal Property Law and the act of Congress applicable to a bill of lading do not apply to it. This contention is disposed of by *Jackson Architectural Iron Works* v. *Hurlbut* (158 N. Y. 34) in which the court said: " A common carrier is one who, by virtue of his calling, undertakes, for compensation, to transport personal property from one place to another for all such as may choose to employ him, and every one who undertakes to carry for compensation the goods of all persons indifferently, is, as to liability, to be deemed a common carrier."

Where persons calling themselves forwarders are so conducting their business as to lead the public to believe that they are carriers and are employed as carriers to ship goods without any knowledge of their true character, the liability of the carrier will attach to them. (*Ingram* v. *American Forwarding Co.*, 162 Ill. App. 476; *Bare* v. *American Forwarding Co.*, 146 id. 388; *United States* v. *Ramsey*, 197 Fed. Rep. 144; *United States* v. *Sioux City Stock Yards Co.*, 162 id. 556.)

In addition to all that has been said as to the negotiability of the bill of lading in question, the allegations of the fraudulent issue of the bill of lading by defendant acting in concert with the Quaker City Morocco Company and the payment by Necha Borenstein of the alleged full value of the merchandise described in the bill and the acceptance and the retention by

the Quaker City Morocco Company of the moneys thus paid in consummation of the alleged fraud and the various indorsements upon the bill of lading by the defendant and its agents completely estop the latter from raising any question of plaintiff's title to the bill in this case. (*Bank of Batavia* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 195.)

The order appealed from is affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., LAUGHLIN, SMITH and MERRELL, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.