CLARA M. NELLIS, Respondent, *v.* THE WESTERN LIFE INDEMNITY COMPANY, Appellant.

Insurance (life) — fraud — rights of policyholder under policy which is deceptive and misleading in terms — when such a policy will be construed in favor of insured and understanding of insured, at time policy was taken, be sustained — when action in equity not necessary.

1. Where it is necessary for a plaintiff before he can recover to establish fraud *aliunde* a contract, an action in equity to reform

the contract is necessary; but when it appears upon the face of the contract that by artifice and deception a contracting party has been misled, the courts can, if necessary, in an action at law on the contract, disregard the part constituting the deception and fraud and give effect to the remainder.

2. When a person accepts insurance upon terms so written in the policy by the insurer, either intentionally or otherwise, as to be calculated to deceive, and in such ambiguous language that it is possible to construe them in more than one way, a construction in favor of the understanding of the insured, which understanding is known to the insurer at the time the policy was taken, should be sustained.

3. Plaintiff's decedent took out the policy of insurance now in suit, the obligations of which were afterward assumed by defendant, which on its face states that the company by which it is issued "Does hereby promise to pay, *subject to the terms hereof*, * * * three thousand dollars to" the beneficiary named therein.  On the third page of the policy there was a blank form of application for insurance and included in such application are certain warranties and also an agreement in eighteen subdivisions in continuous lines and in very fine print, the fifteenth of which subdivisions is as follows: "15. That in consideration of the terms and conditions upon which the policy hereby applied for is sold, I agree to pay an advance cash premium in amount and at times stated in the policy hereby applied for, and I further agree that the Society shall charge the said policy with the net single premium as determined by the Actuaries' or Combined Experience Table of Mortality, and interest at four per cent; such table for each dollar of insurance being endorsed hereon; said single premium to bear interest at the rate of four per centum per annum, and a lien is hereby created in favor of said Society, for the amount of said single premium and interest; said lien shall be accounted as due and owing the Society, and the Society shall collect the same by deducting it from the amount payable under said policy at its maturity, or at the maturity of any benefits provided therein."  It is claimed by the defendant that by virtue and as the result of this clause the beneficiary is only entitled to recover the sum of $451.14 on the policy.  One of the findings by the trial court is "That the said policy upon its face was designed to mislead the insured and to give him to understand that upon his death three thousand dollars at least would be paid to the beneficiary, and it had the effect designated, so that the insured did believe that the sum of at least three thousand dollars would be paid to the beneficiary upon his death." *Held*, that defendant is

indebted to the plaintiff in the sum of three thousand dollars and interest from the time when the same became due.

*Nellis* v. *Western Life Indemnity Co.*, 145 App. Div. 908, affirmed.

(Argued January 10, 1913; decided February 11, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 5, 1911, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so fas as material, are stated in the opinion.

*Charles D. Thomas* for appellant. The obligation of the defendant is to be measured by its contract. (*Allen* v. *G. A. Ins. Co.*, 123 N. Y. 6; *Hamilton* v. *F. M. L. Assn.*, 27 App. Div. 480; *Preston* v. *Ætna Ins. Co.*, 193 N. Y. 142; *Schoonmaker* v. *Hoyt*, 148 N. Y. 415; *Bedell* v. *Edgett*, 120 App. Div. 451; *Houlihan* v. *P. A. Ins. Co.*, 196 N. Y. 337; *Simpson* v. *Trust Co. of America*, 129 App. Div. 200; 2 Parsons on Cont. [7th ed.] 653; *Ward* v. *Whitney*, 8 N. Y. 442; *Sattler* v. *Hallock*, 160 N. Y. 291; *Gail* v. *Gail*, 127 App. Div. 892.)

*Charles E. Snyder* for respondent. It is found as a fact that the policy was designed upon its face to mislead the insured into the belief that he was insured for $3,000, and that the policy had the effect designed and that the insured believed that the $3,000 would be paid to his beneficiary. (*White* v. *Hoyt*, 73 N. Y. 505; *Trustees of East Hampton* v. *Vail*, 151 N. Y. 470; *Stokes* v. *Mackey*, 140 N. Y. 640; *Kenyon* v. *K. T. M. M. A. Assn.*, 122 N. Y. 247; *First Nat. Bank* v. *Dana*, 79 N. Y. 108; *Eastland* v. *Clarke*, 165 N. Y. 426; *Rounds* v. *D., L. & W. R. R. Co.*, 64 N. Y. 133; *Bernhard* v. *R. & S. R. R. Co.*, 1 Abb. Ct. App. Dec. 134.) It being a fact that the policy was designed to mislead the insured into believing that he was insured for $3,000 and that $3,000 would be paid his beneficiary,

the policy should be construed accordingly. (*White* v. *Hoyt,* 73 N. Y. 505; *Gillet* v. *Bank of America,* 160 N. Y. 555; *Johnson* v. *Hathorn,* 3 Abb. Ct. App. Dec. 468; *Barlow* v. *Scott,* 24 N. Y. 40; *Hoffman* v. *Æ. F. Ins. Co.,* 32 N. Y. 405; *Polhoff* v. *S. A. Conduit Co.,* 143 App. Div. 162; *Stanton* v. *Erie R. R. Co.,* 131 App. Div. 879; *Potter* v. *Ontario, etc., Co.,* 5 Hill, 147.) Plaintiff is entitled to the most favorable construction of the policy. The language of the policy is to be taken most strongly against the defendant. (*Imperial Shale Brick Co.* v. *Jewett,* 169 N. Y. 143; *Kratzenstine* v. *W. Assurance Co.,* 116 N. Y. 54.) The 15th paragraph of the application is so repugnant to the clear intent of the parties that it should be disregarded, except as it is evidence of an intent to mislead the insured. (*Cayuga Bank* v. *Warden,* 4 N. Y. 24; *Brewster* v. *Balch,* 41 N. Y. Super. Ct. 63; *Barr* v. *Broadway Ins. Co.,* 16 N. Y. 267; *Pollen* v. *Le Roy,* 10 Bosw. 38; *Eliassof* v. *Dewandelaer,* 30 App. Div. 155; *Fairchild* v. *Lynch,* 10 J. & S. 265; *Mason* v. *White,* 11 Barb. 174; *Brookman* v. *Kurzman,* 94 N. Y. 273; *Benjamin* v. *Welch,* 73 Hun, 371; *Butler* v. *Clark,* 29 Abb. [N. C.] 414.)

CHASE, J. This is an action upon a policy of insurance, issued upon the life of George W. Nellis, payable to the plaintiff, his daughter, as beneficiary. The plaintiff has recovered thereon $3,000, with interest from the time when said policy became due and payable.

The defendant insists that it is entitled to deduct from the amount of said policy the sum of $1,950.00, with interest thereon at four per cent from May 29, 1899, pursuant to the terms of the contract with the insured, as it is alleged and construed by the defendant. If such deduction had been made the plaintiff would have been entitled to recover but $451.14, with interest from the time when said policy was payable. The defendant assents to judgment against it for that amount.

At some time prior to 1899, Nellis became a member of the Imperial Council of the Order of United Friends, a New York corporation, and was insured therein as shown by two certificates or policies, each of which provided that the insured is "entitled to all the rights and privileges of such membership, and a benefit of not exceeding fifteen hundred dollars from the relief fund; which sum shall at death be paid to his daughter, Clara M. Nellis, subject to the laws, rules and regulations of the Order." That order or corporation failed and a receiver was appointed of its assets.

Soon thereafter and on May 2, 1899, Nellis received from the Independent Order of Odd Fellows Mutual Life Insurance Society, a Pennsylvania corporation, the policy of insurance now in suit, fully executed, which on its face is a promise to pay three thousand dollars to the beneficiary ninety days after the receipt and approval at its home office of proofs of death of the insured. The only condition in the promise is in the words in italics in the following sentence: "Does hereby promise to pay, *subject to the terms hereof,* at its home office in Philadelphia, Pennsylvania, three thousand dollars to Clara M. Nellis."

The policy of insurance is upon the first page of a large sheet of paper folded so as to make four pages. On the second page there is printed a large number of conditions and agreements, including an agreement on the part of the society to pay the insured certain prescribed percentages of the amount of the policy in case of enumerated injuries by accident, and also an agreement numbered "Thirteen," as follows, viz.:

"(a) Upon sixty days' written notice prior to the third or any subsequent anniversary of this policy in force, provided there is no indebtedness against it, the insured may at such anniversary, subject to the Society's rules, avail himself of seventy per cent. of his proportion of the Insurance Fund, in accordance with the Actuaries' or

Combined Experience Table of Mortality, and four per cent. interest under any one of the following options:

" Option One.— Extended insurance.

" Option Two.— Paid up insurance.

" Option Three.—Take the amount as a loan on the policy.

" After this contract has been three or more years continuously in force, in the event the insured shall fail to pay a premium hereunder, and shall have selected no option as herein provided, the Society will voluntarily continue this contract in force under Option One, and upon the expiration of the extension granted, this contract shall cease.

" (b) The dividend period of this contract ends twenty years from its date, and if the insured is then living, and the premiums have been duly paid to that date in accordance with the conditions of this contract, the Society will then apportion, as a dividend to the insured, any surplus accumulations in the insurance fund creditable hereto, which may be used in accordance with either of the following privileges:

" First.— Withdraw the dividend in cash, and

" (a) Discontinue this contract, or

" (b) Continue this contract in force at the same premium rate.

" Second.—Convert the dividend into paid up insurance, and

" (a) Discontinue this contract, or

" (b) Continue this contract in force at the same premium rate, subject to evidence of good health."

At the time of the receipt of the policy by Nellis he was sixty-four years of age, and the regular monthly premium for a person of that age, as shown by a statement printed upon the second page of the policy, was three dollars per thousand dollars of insurance, payable monthly during the continuance of the policy. On the third page of the policy there was at that time a blank form of application for insurance, and included in such

application are certain warranties and also an agreement in eighteen subdivisions in continuous lines and in very fine print, the fifteenth of which subdivisions is as follows: "15. That in consideration of the terms and conditions upon which the policy hereby applied for is sold, I agree to pay an advance cash premium in amount and at times stated in the policy hereby applied for, and I further agree that the Society shall charge the said policy with the net single premium as determined by the Actuaries' or Combined Experience Table of Mortality, and interest at four per cent; such table for each dollar of insurance being endorsed hereon; said single premium to bear interest at the rate of four per centum per annum, and a lien is hereby created in favor of said Society, for the amount of said single premium and interest; said lien shall be accounted as due and owing the Society, and the Society shall collect the same by deducting it from the amount payable under said policy at its maturity, or at the maturity of any benefits provided therein."

In the same envelope in which the policy was sent to Nellis was a duplicate of the blank application of insurance on the third page of the policy; a letter purporting to be signed by the late imperial recorder of the Order of United Friends; a printed statement of the Odd Fellows Society and a letter from its secretary.

The letter from the imperial recorder of United Friends commends the Odd Fellows Mutual Life Insurance Society as an old line premium company in every way reliable. It gave Nellis certain directions, including the following: "In order to ascertain *your premium*, multiply the rate as given in the table by the number of thousand of dollars insurance wanted at the rate given at your nearest birthday. This will be your rate for all time, as there will be no increase as you grow older." It also called his attention to the provisions of the policy relating to accidents and the options enumerated in the "Thirteenth" paragraph above quoted.

The statement from the Odd Fellows Mutual Life Insurance Society refers to the agreements of the society in case of accidents and the options given the policyholders. As an illustration of the policy options, it says: " For fifteen years the second option paid up insurance is $1,860 or third option loan value $1,116.00. For nineteen years the second option paid up insurance is $2,575 and third loan value $1,674."

In the letter from the secretary of the society he says: " You are herewith supplied with a policy of re-insurance, fully executed; also a separate application prepared for your signature. In order to put the policy in immediate operation, *all that is required of you* is that you sign the application and return it to us with *one monthly premium*. * * * Everything is in your hands, and as soon as you have executed the application and sent it to this office with *one premium*, your insurance continues, subject to the terms of the re-insurance contract. Under this proposition you lose little or nothing, but on the contrary *preserve your life insurance* upon a more stable and permanent basis. * * * We shall be pleased to answer any inquiries which you may choose to make."

Nellis and his daughter, the beneficiary, read over all the papers, and on or about May 15, 1899, she wrote to the secretary of the society making some inquiries as had been suggested by him. In a reply on May 23 he said: " The policy sent states the date upon which the monthly premiums are due. * * * You do not give the age of your father, but if he is between fifty-six and sixty-five years, for three thousand dollars insurance *his monthly rate would be nine dollars*. * * * You should send *your first payment promptly*, as you have no insurance until this is received."

On the third page of the policy, under the blank form for an application for insurance referred to above, is a series of figures headed " Single premiums basis, one dollar of insurance, Actuaries' or Combined Experience

Table of Mortality and 4 per cent." Following the
heading as stated, under the word "age," are the figures
20 to 97 inclusive in a column, and under the word
"premium," are the figures $0.26 to 99 in a correspond-
ing column a little to the right of the first column men-
tioned. Opposite the figures 64, in the "age" column,
are the figures 65 in the "premium" column.

On May 29, 1899, Nellis executed the application for
insurance in duplicate and forwarded the one that was
independent of the policy to the society, together with
nine dollars, his first monthly payment.

On March 10, 1905, the obligations of the Odd Fellows
Mutual Life Insurance Society were assumed by the
Knights Templars and Masons Life Indemnity Com-
pany of Illinois, and a signed printed statement formally
assuming such obligations was sent to Nellis with direc-
tions to attach the same to the policy and it was so
attached. After March 10, 1905, the Knights Templars
and Masons Life Indemnity Company changed its name to
the Western Life Indemnity Company, which is the name
of the defendant in this action.

Nellis continued to pay nine dollars per month as
agreed by him to the Odd Fellows Society and its success-
ors until his death.

It is now claimed by the appellant that Nellis obligated
himself to make an advance cash payment of $1,950.00 to
secure the policy, or in lieu thereof assumed an indebted-
ness of that amount to be carried for him by the society
at four per cent interest. The society determines the
amount of such alleged advance cash premium by multi-
plying the amount of the policy ($3,000) by sixty-five, the
number shown in the said column marked "premium,"
opposite the figures sixty-four in the column marked
"age," thus making the amount $1,950.00, claimed by the
defendant as a net single advance premium owing by
Nellis and chargeable with interest to the policy.

Under the contract, as claimed by the defendant, the

interest on the alleged deferred premium would amount to $78.00 per year. As construed by the defendant, the interest of Nellis and his beneficiary in the policy would, notwithstanding his payment of nine dollars per month, grow less and less from year to year, and it would have been wholly overcome and exhausted had he lived a little more than thirteen years after the policy was issued. He actually lived seven years, five months and twenty-five days, paying, as provided by the policy, nine dollars per month, amounting in all to $972.00, and the defendant insists that his beneficiary is only entitled to recover thereon the sum of $451.14.

Substantially all of the evidence before us consists of writings, including the policy, emanating from the defendant or its predecessors. The letters accompanying the policy do not purport to change the obligation of the society as expressed in the policy; but nothing received from it or from any source ever in any way referred in the remotest way to the fifteenth paragraph of the long agreement in the application for the insurance, or to the necessity of the insured paying or becoming obligated to pay an advance cash premium in addition to the regular monthly payments.

The terms of the policy, apart from the conditions and agreements made a part thereof, by reference therein to other papers printed independently on other pages of the same instrument, are plain, clear and complete in themselves. They are reasonably clear when read with the conditions and agreements contained on the second page of the instrument; but when the fifteenth paragraph of the agreement in the application signed by Nellis is read as part of the contract, it renders the whole ambiguous and of uncertain meaning even to an expert in insurance contracts. Said paragraph of the agreement in the application is in itself particularly ambiguous and uncertain. What did the society mean by the " terms and conditions upon which the policy hereby applied for *is sold ?* " The

policy does not, in terms, purport to be a paid-up or a partially paid-up obligation. It nevertheless refers to a *" net single premium as determined by the Actuaries' or Combined Experience Table of Mortality."* The language quoted is applicable and apparently refers to a single payment made to purchase a paid-up policy or one on which no payments are thereafter required from the insured. The society may by that paragraph have contemplated that the amount necessary, as determined by the actuaries' or combined experience table of mortality, to purchase three thousand dollars of paid-up insurance, would be charged to the insured and carried as an indebtedness subject to deductions from time to time by the amount of any other premium payments made upon the policy. If such was the purpose of the society it is not so contended in this action. Clearly Nellis did not construe and it was not necessary that he should construe the fifteenth paragraph of the agreement as applicable to one taking a policy for a specified amount with specified monthly payments. It is at least very doubtful whether that paragraph has any application whatever to the rights of the plaintiff in this suit. That paragraph may and probably does refer exclusively to a policy based upon a single premium paid or assumed when an insurance *" is sold."*

If we accept the defendant's construction of the policy, then the maximum amount of insurance which Nellis obtained thereby was $1,050.00, subject to reduction from year to year. He paid and was directed and required to pay for the policy as upon three thousand dollars of insurance. The policy expressly provides that a person of his age shall pay " three dollars for each one thousand dollars of insurance." The fact that he was required to pay nine dollars as a monthly premium contradicts the construction given the policy by the defendant. The absurdity of the defendant's contention is in no way explained by it, and it is emphasized when we consider that the year prior to his death Nellis was paying nine

dollars per month to continue an insurance which was then less than five hundred dollars.

Three thousand dollars was the amount of Nellis' certificates in the Society of United Friends. Three thousand dollars was the amount of insurance applied for and upon which he continued to pay monthly premiums. Unless the plaintiff's construction of the policy is sustained, the options provided for by the policy were at all times misleading and their consummation impossible. The policy was unquestionably construed by Nellis as giving to him for the benefit of his daughter three thousand dollars of insurance. He was led to that conclusion by the defendant and its predecessors through the policy itself.

The trial court found, among others, the following findings of fact:

"XLI. That the plaintiff and the insured were not careless in taking out the insurance policy, or in the transfer of the same to the defendant. The plaintiff and the insured, as the evidence shows, were not thoughtlessly satisfied with the terms of the policy and the application, but sought explanation thereof, and the letters and papers contained in the evidence were forwarded and furnished the plaintiff and the said George W. Nellis in answer to their inquiries.

"XLII. That the said policy upon its face was designed to mislead the insured and to give him to understand that upon his death three thousand dollars at least would be paid to the beneficiary, and it had the effect designated so that the insured did believe that the sum of at least three thousand dollars would be paid to the beneficiary upon his death."

It is urged that the findings quoted are mere conclusions of law, but under all of the circumstances disclosed they are at least mixed findings of law and fact, and appear to be sustained as such.

The trial court also found as a conclusion of law that by reason of the facts found the defendant is indebted to

the plaintiff in the sum of three thousand dollars and interest from the time when the same became due.

When a person accepts insurance upon terms so written in the policy by the insurer, either intentionally or otherwise, as to be calculated to deceive, and in such ambiguous language that it is possible to construe them in more than one way, a construction in favor of the understanding of the insured, at the time the policy was taken, should be sustained.

This conclusion is not alone approved by true principles of sound ethics and a reasonable regard for the rights of contracting parties, but by many authorities.

Kent in his Commentaries (Vol. 2, p. 557) says: "The true principle of sound ethics is, to give the contract the sense in which the person making the promise believed the other party to have accepted it, if he in fact did so understand and accept it."

Beach on the Modern Law of Contracts (Vol. 1, § 707) asserts the right to such construction in some cases even against the true meaning of the contract, and says: "Where a written contract has an apparent meaning at variance with its real meaning, it may bind the author of the ambiguity contrary to its real meaning, if this meaning was so obscurely expressed that the other party was likely to be misled and was misled, and if the circumstances entitled him to timely notice of his mistake and notice was not given."

Page on Contracts (§ 1127) says: "If the promise is so ambiguous as to be susceptible of more than one interpretation and the promisor knows which of these possible meanings the promisee attaches to the promise, that meaning will be adopted by the court in construing the contract. The same rule applies where the promisor has reason to suppose that the promisee understands the ambiguous promise in a particular sense. This rule applies to express contracts, as well as to implied ones, and to written contracts as well as to oral ones."

In *Johnson* v. *Hathorn* (2 Abb. Ct. App. Dec. 465, 468), the defendant having agreed to transfer to plaintiff full-paid stock, fraudulently induced him to accept stock that was on its face but half paid, with a deceptive and ineffectual guaranty, the court say: " He can derive no aid from the adroit and slippery language of the subjoined guaranty. One who uses words in a deceptive and double sense, for the purpose of misleading the party with whom he contracts, is bound by them in the sense in which he intended they should be understood."

In *Potter* v. *Ontario & Livingston Mutual Ins. Co.* (5 Hill, 147) a person holding an insurance policy effected further insurance and sent his written notice of the fact to the company issuing the first policy and it replied by its secretary, saying: "I have received your notice of additional insurance." Held, that in an action upon the policy that the letter imported both an acknowledgment and an approval in writing, within the meaning of the condition as to further insurance in the first policy. The court say: " Where the terms of a promise admit of more senses than one, the promise is to be performed in that sense in which the promisor apprehended at the time the promisee received it." (p. 149.)

In *Barlow* v. *Scott* (24 N. Y. 40) the court held that a promise is to be interpreted in that sense in which the promisor knew that the promisee understood it. In that case the vendor of land undertook to execute such a conveyance as he had received from his grantor, which he stated was a warranty deed; the same in fact contained only a covenant against the acts of the grantor. The purchaser, although he saw the deed under which the vendor held, understood it to be and understood the vendor to promise a deed with general warranty, and the vendor knew that such was his understanding. Held, that the vendor was bound to convey with general warranty.

In *Hoffman* v. *Ætna Fire Ins. Co.* (32 N. Y. 405, 413)

the court say: "It is a rule of law, as well as of ethics, that where the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was *understood* by the promisee. (*Potter* v. *Ontario & Livingston Mut. Ins. Co.*, 5 Hill, 149; *Barlow* v. *Scott*, 24 N. Y. 40.)"

In *Fitch* v. *American Popular Life Ins. Co.* (59 N. Y. 557, 570) the court say: "Where a warranty is understandingly and clearly given by an insured, no matter how immaterial the fact warranted may be, he will be held strictly to his contract. But when thrown off his guard and induced to enter into such a contract by declarations of the insurer, such as appear in this case to have been contained in the papers prepared by the defendant and evidencing the contract, the declaration in the same papers that the statements are warranties and the basis of the contract, etc., must be so construed, if possible, as to harmonize with the explanations and declarations of the insurer; *and if this is not possible they should be rejected.*"

In *White* v. *Hoyt* (73 N. Y. 505, 511) the court say: "The rule in ethics is, that 'when the terms of a promise admit of more senses than one, the promise is to be performed in that sense in which the promisor apprehended at the time the promisee received it,' and this is the established rule of law, as well as in morals. In the language of the books, it is to be interpreted in the sense in which the promisor had reason to suppose it was understood by the promisee. (*Hoffman* v. *Ætna F. Ins. Co.*, *supra*; *Johnson* v. *Hathorn*, 2 Abb. Ct. of App. Dec. 465; *Barlow* v. *Scott*, 24 N. Y. 40; *Mowatt* v. *Lord Londesborough*, 3 E. & B. 307; *Potter* v. *Ontario Ins. Co.*, 5 Hill, 147.)"

It was also held in *White* v. *Hoyt* that "while * * * the interpretation of written instruments is a question of law for the court, yet, when the interpretation of the promise depends upon the sense in which words are

used, or in which the promisor had reason to suppose that the promisee understood them, which is to be determined from the relation of the parties and the surrounding circumstances, it becomes a mixed question of law and fact, and may be submitted, with proper instructions, to a jury." (p. 505.)

In *Hamer* v. *Sidway* (124 N. Y. 538, 550) the court say: "But in an effort to ascertain the construction which should be given to it (the letter), we are also to observe the rule that the language of the promisor is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee."

In *Gillet* v. *Bank of America* (160 N. Y. 549, 555) the court say: "The reason of the rule that the language of an instrument is to be construed against the person who proposes it rather than against the person who is invited to accept it, is that men are supposed to take care of themselves, and that he who chooses the words by which a right is given, ought to be held to the strict interpretation of them, rather than he who only accepts them. * * * In the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion and apparent object of the parties, to determine the meaning and intent of the language employed."

The appellant insists upon the construction of the policy as hereinbefore stated, and argues that if the plaintiff claims that the insured was induced to accept the policy in the form in which it exists through fraud she should have brought an action in equity to reform the policy. We think the rule is that where it is necessary for a plaintiff before he can recover to establish fraud *aliunde* a contract, an action in equity to reform the contract is necessary; but when it appears upon the face of the contract that by artifice and deception a contracting party has been misled, the courts can, if necessary, in

an action at law on the contract, disregard the part constituting the deception and fraud and give effect to the remainder.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT, HISCOCK, COLLIN and HOGAN, JJ., concur.

Judgment affirmed.