No. 12,585.

Union Insurance Society of Canton, Ltd. *v.* Robertson.
(298 Pac. 1064)

Decided April 27, 1931.

Messrs. BARTELS & BLOOD, Mr. ARTHUR H. LAWS, for plaintiff in error.

Mr. PHILIP HORNBEIN, for defendant in error.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

S. R. ROBERTSON obtained a judgment against Union Insurance Society of Canton, Limited, on a policy of insurance. The insurance company brings the matter before us by writ of error.

The policy insured Robertson against loss sustained by reason of "theft" of his automobile.

The facts are undisputed. The plaintiff gave his son permission to use the car on an evening and night in February, 1926. No express authority was given by the plaintiff to his son to let anyone have the car. After riding around with some friends, young Robertson went to a restaurant and met some other friends, including Elmer Carlson, and also a young woman whom he met there for the first time. They all went from there to the apartment of William Cosgriff. There was a good deal of drinking there, and for that reason the young woman asked to be taken home. She testified that young Robertson said that he would see her home; that Carlson went also; that both were going to take her home. All three started for her home in the plaintiff's automobile.

Young Robertson was at the wheel. He was drunk, and —whether because of his condition, or his unfamiliarity with the home address of his new acquaintance, or both, does not appear—instead of going toward her home, he went in the opposite direction and wound up at the Norman apartment house. They went into the Wheelock apartment there. Young Robertson was so drunk that ''he could just make it to the Wheelock apartment, and that was all.'' On the way there the automobile collided with some other automobiles. As soon as they entered the Wheelock apartment, young Robertson, who was ''very intoxicated,'' took off his coat. According to his testimony, he then sat down on the lounge, but according to the testimony of the young woman, he fell on the floor and went to sleep right away. She decided to go home. Young Robertson was too drunk to take her there, so Carlson got the automobile key from young Robertson's overcoat pocket and took her home. Though he had been drinking, Carlson was not nearly so intoxicated as young Robertson. The young woman testified that he ''handled the car capably,'' and ''had no accident, collision or trouble.'' After taking her home, he returned to the Cosgriff apartment, got into his own automobile, which he had parked in the vicinity, and drove in it to the Wheelock apartment, where he stayed with young Robertson the rest of the night. The plaintiff's automobile was returned to the Norman apartment house by a garage attendant. Carlson and young Robertson left the apartment together sometime after 9 o'clock in the morning. The plaintiff's automobile was found to be damaged and the key was on the floor of the automobile.

Section 6729, C. L., provides: ''Any person who without the consent of the owner, shall take, use, operate or remove * * * from any place * * * on a * * * street * * * an automobile * * *, and who shall operate or drive the same, * * * for his own profit, use or purpose, shall be deemed guilty of larceny and shall

be punished accordingly.'' That section does not apply to a situation such as this record discloses. Carlson did not take or drive the automobile ''for his own profit, use or purpose.'' He took it to carry out the joint purpose and plan of young Robertson and himself to take the young woman to her home. He merely continued the trip that had been jointly undertaken, but which had been interrupted by young Robertson's drunken collapse. Assume a more creditable situation. Suppose that young Robertson was sober; that he took the young woman home; that while driving to his own home he fainted; and that Carlson took his place at the wheel and continued the trip to the Robertson house. In such a case could any one successfully contend that there was a theft of the automobile? Does the present case differ in principle from the assumed case? Carlson derived no benefit from the trip. He returned to the Wheelock apartment after taking the young woman home.

Consider the situation. The young woman was in that apartment with two young men. Both men were under the influence of liquor. It was about 2 o'clock in the morning. The young woman asked to be taken home. One of the men was unable to comply with her request, being too drunk to even keep awake. Carlson was in possession of his faculties. He complied with her request. In taking her away from that apartment and to her home, he merely did what consideration for her, for young Robertson and for the plaintiff himself required and what common decency demanded. Doubtless he deserves criticism for drinking; he may have been, though it is not clear that he was, negligent in driving the automobile from the young woman's home to the Cosgriff apartment; but whatever else he was on that occasion, he certainly was not a thief. In the circumstances, consent, if necessary, may well be implied.

There was no larceny within the meaning of the statute, no theft within the terms of the policy; the loss, therefore, was not covered by the policy.

The judgment is reversed, and the cause is remanded with instructions to the trial court to dismiss the action.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE MOORE and MR. JUSTICE BURKE concur.