ADDIE B. DeLONG, Plaintiff, *v.* MASSACHUSETTS FIRE AND MARINE INSURANCE COMPANY, Defendant.

Supreme Court, Erie County, February 15, 1932.

*Selby G. Smith,* for the plaintiff.

*Shire & Jellinek,* for the defendant.

HINKLEY, J. This action was brought upon an ordinary form of insurance contract covering loss and damage to a motor vehicle by

theft. An automobile stored in a garage was taken in the night time by a young man in charge of the garage. Later the car was wrecked out in the country while being driven by another young man who had been picked up by the first thief, larcenist or stealer.

The court submitted to the jury the following questions which were answered as indicated: Question One. Is the plaintiff the real party in interest? Answer. Yes. Question Two. Did Leland Putnam take from the plaintiff, her automobile with felonious intent to appropriate it to his own use permanently and wholly? Answer. No. Question Three. Was the taking of the automobile a theft within the terms of the policy as defined by common thought and speech? Answer. Yes.

Upon the rendition of that verdict, the court entered a general verdict in favor of the plaintiff, all other issues raised by the pleadings having been determined without dispute upon the trial.

The proof would not have sustained a verdict based upon a finding that the thieves, larcenists or stealers intended to or did permanently and wholly appropriate the automobile to their own use. The proof was practically undisputed that the thieves, larcenists or stealers violated section 1293-a of the Penal Law in that they did " without the consent of the owner take, use or operate, or cause to be taken, used or operated, an automobile for their own profit, use or purpose " and did " steal the same " and were " guilty of larceny."

Upon a criminal trial for a violation of section 1293-a of the Penal Law the court would be controlled by section 1307 of the Penal Law, which is as follows: " § 1307. Intent to restore property no defense. The fact that the defendant intended to restore the property stolen or embezzled, is no ground of defense, or of mitigation of punishment, if it has not been restored before complaint to a magistrate, charging the commission of the crime."

The very extensive ownership of automobiles has reached its present peak in a relatively short space of time. The same lack forprotection and necessity, therefore, which in frontier days called of the hanging of horse thieves, has demanded of society in recent years some protection against the unauthorized use and damage of motor vehicles. The vigilantes drew no fine distinction among thieves, larcenists and stealers. The genus of a horse thief was one who mounted a stranger's horse irrespective of whether the rider was booted and spurred and irrespective of whether he was riding for joy or profit. Crudity of justice based upon might makes right has yielded to progressive civilization. Nicety of nomenclature, therefore, which inspired insurers to employ the word " theft " when the Legislature used the words " steal " and " larceny " must, of

course, be sustained in a legalistic forum. (*Van Vechten* v. *American E. F. Ins. Co.*, 239 N. Y. 303.)

At the time of the enactment of the statute defining the unauthorized use of motor vehicles as larceny and stealing, the average individual, typical representative of common thought and speech, did not classify him as a thief. Perhaps this was in a measure due to the use of the loose popular synonym of " joy rider." Since that time common-law larceny occupies only a very small proportion of the total stealing and larcenies of motor vehicles. Hold-up men only temporarily steal automobiles for use in their robberies. Young men and boys commit burglary solely to indulge in temporary joy rides. Garage keepers and attendants steal them to run errands. Convivial parties openly or secretly held in violation of the National Prohibition Law are often complete only after a ride in a stolen automobile. Such thefts, larcenies and stealing are productive of a great many of the serious injuries and deaths which occur upon the public highways. Former innovations such as these have persisted and become so general as no longer to be innovations. Criminal prosecution and imprisonment for such offenses are constantly detailed in the public press. Surely such innovations have sunk into common thought and common speech. Inquiry from one hundred automobile policyholders would evince one hundred replies that theft under their insurance contract included " joy riding." That the insurers continue to use the loose, colloquial and popular term of theft instead of larceny and stealing which are the proper terms of art as found in the penal statutes may 'ere long evoke the old-fashioned doctrine of *Nellis* v. *Western Life Indemnity Co.* (207 N. Y. 320). Other States are tugging at the leash or, more properly, straining at ancient moorings in response to a distinct tidal flow towards substantial justice. (Cyclopedia of Insurance Law [Couch], § 1176-a.)

The highest court of the State of New York proclaimed in January, 1925, that the word " theft " under a policy of insurance had not *yet* sunk into common thought and common speech as to so characterize the unauthorized use of motor vehicles. (*Van Vechten* v. *American E. F. Ins. Co., supra.*)

This court realizes that in that case the stealer or larcenist had become exempt from criminal prosecution by section 1307 of the Penal Law for the stolen property had been restored before complaint to the magistrate and the larcenist or stealer had thus established his original intent to so restore. That must follow if we reason that a statutory prohibition against a defense signifies conversely that proof beyond the pale of that prohibition is a defense. Familiarity with judicial opinions leads to the conclusion

that the interstate consideration at the end of the court's opinion (*Van Vechten* v. *American E. F. Ins. Co., supra*) was another or additional reason supplemental to the main or primary reason which was the basis for the decision. Seven years have elapsed since that pronouncement. Jurymen are both theoretically and practically in a better position than a court to divine common thought and define common speech. Whatever are the relative, individual or exclusive functions of a court and/or a jury to interpret an insurance policy in the light of common thought and common speech, their determinations were and are in this case coincident. The decision of the court in this case is grounded in the belief that the future possibility indicated in the *Van Vechten* case has fructified into a prognosticated frumentary.