## PENNSYLVANIA INDEMNITY FIRE CORPORATION v. ALDRIDGE.

### No. 7517.

United States Court of Appeals for the District of Columbia.

Decided Jan. 13, 1941.

Chas. S. Baker, Benj. L. Tepper, and Warren E. Magee, all of Washington, D. C., for appellant.

Julian H. Reis and Leroy S. Bendheim, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

MILLER, Associate Justice.

Appellee recovered judgment in the lower court under a policy of insurance which provided for payment of loss from "damage resulting from theft." The evidence disclosed that appellee employed a colored boy named Harrison, whom he knew as the boy who delivered papers at his house, to clean and simonize his car at an agreed price of $2. The boy was to furnish the materials and appellee exercised no discretion over the manner or method of doing the job. The boy called at appellee's house for the keys to the car, which was parked in the street about a block from appellee's home. Appellee's wife, after consulting with her husband, delivered the keys to Harrison. Neither appellee nor his wife authorized the boy to move the car; but he did so, nevertheless, taking several other colored boys for a ride into nearby Maryland. Upon his return into the District of Columbia, and while taking one of the boys to the latter's home, he accidentally wrecked the automobile at a point approximately a mile, or a mile and a half, from appellee's home. Harrison was indicted for violation of Section 62 of Title 6 of the District of Columbia Code,[1] pleaded guilty, and was placed on probation.

---

[1] 37 Stat. 656: "Any person who, without the consent of the owner, shall take, use, operate, or remove, or cause to be taken, used, operated, or removed from a garage, stable, or other building, or from any place or locality on a public or private highway, park, parkway, street, lot, field, inclosure, or space, an automobile or motor vehicle, and operate or drive or cause the same to be operated or driven, for his own profit, use, or purpose, shall be punished by a fine not exceeding one thousand dollars or imprisonment not exceeding five years, or both such fine and imprisonment."

The question of the case is whether Harrison's acts constituted "theft" within the meaning of the insurance policy. Appellant argues that theft is a popular name for larceny or stealing; hence, that it is synonymous in meaning with larceny; that larceny requires a specific intent to steal in addition to an intentional trespass; that while Harrison committed an intentional trespass, he did not intend to steal the car; i. e., he did not intend permanently to deprive the owner of his property. In other words, what appellant is contending for is the common-law definition of larceny; the strictest possible construction of the word, in favor of the insurer and against the insured.

But the general rule applicable in the interpretation of an insurance policy is that, if its language is reasonably open to two constructions, the one most favorable to the insured will be adopted.[2] Any fair doubt as to the meaning of its own words should be resolved against the insurer.[3] As was said by the Supreme Court in Aschenbrenner v. United States Fidelity & Guaranty Co.:[4]

"The phraseology of contracts of insurance is that chosen by the insurer and the contract in fixed form is tendered to the prospective policyholder who is often without technical training, and who rarely accepts it with a lawyer at his elbow. So if its language is reasonably open to two constructions, that more favorable to the insured will be adopted * * *."

Moreover, unless it is obvious that words which appear in an insurance policy are intended to be used in a technical connotation, they will be given the meaning which common speech imports.[5] In this respect the rule is the same as in statutory construction.[6]

The record clearly reveals all the elements of the common-law crime of larceny except specific intent permanently to deprive the owner of his property. The fact that Harrison pleaded guilty under the section which defines the crime of unauthorized use of vehicles is not conclusive as to this element of the offense; but the lower court concluded that question by instructing the jury that they "are to regard as a theft the action on the part of Harrison in taking that automobile, if they find he did take it without authority, on a mission of his own." The ultimate question for decision, therefore, is whether the word theft is reasonably open to a construction or definition broad enough to include other offenses similar in nature but lesser in grade than common-law larceny.

Theft is not defined as a crime by the District of Columbia Code. However, in effect, that result was accomplished by the order which was used in defining in the Code the various offenses against property. The classification is as follows: Grand larceny; petit larceny; *unauthorized use of vehicles;* stealing or injuring books; receiving stolen goods; stealing property of the District of Columbia; receiving property stolen from the District of Columbia; destroying stolen property; stealing, destroying, mutilating, secreting, or withholding a will; secreting or converting property of decedent's estate; taking away or concealing writings; sale by conditional vendee, with intent to defraud; offenses against property of electric lighting, heating or power companies; tapping gas pipes; tapping water pipes; embezzlement; conversion by commission merchant; taking property without right; false pretenses; larceny after trust.[7] Each of these offenses—not excepting the first two—lacks one or more of the elements essential to constitute common-law larceny: *Taking* in one, *carrying away* in another, *personal* property in a third, taking *from the possession* in a

---

[2] Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; Federal Ins. Co. v. Hiter, 164 Ky. 743, 746, 176 S.W. 210, 212, L.R.A.1915E, 575.

[3] Stroehmann v. Mutual Life Ins. Co., 300 U.S. 435, 439, 57 S.Ct. 607, 81 L. Ed. 732; Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 322, 48 S.Ct. 512, 72 L.Ed. 895; Aschenbrenner v. United States Fid. & Guar. Co., 292 U.S. 80, 84, 85, 54 S.Ct. 590, 78 L.Ed. 1137; Mays v. New Amsterdam Casualty Co., 40 App. D.C. 249, 252; Nugent v. Union Automobile Ins. Co., 140 Or. 61, 65, 13 P.2d 343, 345.

[4] 292 U.S. 80, 84, 85, 54 S.Ct. 590, 592, 78 L.Ed. 1137.

[5] Aschenbrenner v. United States Fid. & Guar. Co., 292 U.S. 80, 85, 54 S.Ct. 590, 78 L.Ed. 1137; Nugent v. Union Automobile Ins. Co., 140 Or. 61, 65, 13 P.2d 343, 345.

[6] United States v. Wurts, 303 U.S. 414, 417, 58 S.Ct. 637, 82 L.Ed. 932; Old Colony Trust Co. v. Commissioner of Internal Revenue, 301 U.S. 379, 383, 57 S. Ct. 813, 81 L.Ed. 1169; De Ganay v. Lederer, 250 U.S. 376, 381, 39 S.Ct. 524, 63 L.Ed. 1042.

[7] D.C.Code (1929) tit. 6, §§ 60–85, inclusive, 98.

fourth, *intent permanently to deprive the owner of his property* in a fifth.

Logically applied, therefore, appellant's argument would require us to hold that no offense defined in the District of Columbia Code is sufficient to bring a case within the policy of insurance here involved. Presumably, it will be conceded that despite inclusion of *things savoring of the realty* in the District of Columbia definition of larceny, commission of that offense would be sufficient. But once that concession is made, where should the line be drawn? Is petty larceny of a dollar by a charwoman any more clearly a theft, within the meaning which common speech imports, than embezzlement of $100,000 by a cashier?

▇ In a number of cases which purported to apply the common-law definition, persons were held guilty of larceny in spite of the fact that in each case it was not the intention of the taker permanently to deprive the owner of his property.[8] In fact, the only rule as to felonious intent in larceny to which all the cases can be reconciled, is that the intent of the taker must be to appropriate the stolen property to a use inconsistent with the property rights of the person from whom it is taken. It cannot be disputed that Harrison intended, in this case, to make use of the misappropriated car in a manner inconsistent with the property rights of appellee.

In some jurisdictions several of the offenses listed above from the District of Columbia Code, are included within the statutory definition of larceny.[9] In at least one state the word theft is defined as a crime which includes larceny, embezzlement, stealing, or obtaining money, labor, real or personal property, or credit by false pretense or representation.[10] The Quebec Criminal Code defines theft or stealing as follows: "Theft or stealing is the act of fraudulently and without colour of right taking, or fraudulently and without colour of right converting to the use of any person, anything capable of being stolen with intent: (a) to deprive the owner, or any person having any special property or interest therein, temporarily or absolutely of such thing or of such property or interest."[11] The Quebec Court of Review, interpreting this section, held that a theft occurred under circumstances almost completely parallel with those of the present case.[12]

In some jurisdictions, the statutes define as larceny the taking, using, or operating of an automobile without consent of the owner, thus expressly changing the common-law definition, by eliminating the requirement of intent permanently to deprive the owner of his property.[13]

In a number of cases misappropriation of automobiles has been held to be theft within the meaning of that word as used in insurance policies, although the evidence, for one reason or another, would have been insufficient to prove common-law larceny.[14] It is true that the contrary has been held in

---

[8] People v. Thompson, 34 Cal. 671 (owner stole own property from a bailee); Commonwealth v. Rourke, 10 Cush., Mass., 397, 399 (one thief stole from another thief); Reg. v. Beecham, 5 Cox C. C. 181 (theft of a railroad ticket, the use of which would restore it to the owner); Reg. v. Medland, id. at 292 (theft of goods for the purpose of pawning them, with intent to redeem the goods and return them to the owner). Cf. The Queen v. Hall, 1 Den.C.C. 381, 2 Car. & K. 947 (theft of goods with intent to sell them back to the owner); Berry v. State of Ohio, 31 Ohio St. 219, 27 Am.Rep. 506 (theft of goods with intent to return them upon payment of a reward); Commonwealth v. Mason, 105 Mass. 163, 7 Am.Rep. 507 (theft of property to force a sale of it to the taker at a price less than its value).

[9] N.Y.Penal Law (1939). Consol.Laws, c. 40, § 1290; Mass.Rev.Laws (1902) c. 208, § 26; Id. at c. 218, § 40.

[10] People v. Myers, 206 Cal. 480, 275 P.

219; Cal.Penal Code (1939) §§ 484, 485, 490.

[11] Quebec Cr.Code R.S.C. (1906) c. 146, § 347.

[12] Ouimet v. National Ben Franklin Fire Ins. Co., 56 D.L.R. 501. See Globe & Rutgers Fire Ins. Co. v. House, 163 Tenn. 585, 45 S.W.2d 55; Employers' Fire Ins. Co. v. Bartee, 87 Colo. 147, 285 P. 756. Cf. Union Ins. Soc. v. Robertson, 88 Colo. 590, 298 P. 1064.

[13] N.Y.Penal Law (1939) § 1293-a; James v. Phoenix Assur. Co., 75 Colo. 209, 225 P. 213; Cobb v. Commonwealth, 271 Ky. 505, 112 S.W.2d 663.

[14] Nugent v. Union Automobile Ins. Co., 140 Or. 61, 13 P.2d 343; Allen v. Berkshire Mut. Fire Ins. Co., 105 Vt. 471, 168 A. 698, 89 A.L.R. 460; Champion v. Chicago Fire & Marine Ins. Co., 104 N.J.L. 554, 141 A. 794; Granger v. New Jersey Ins. Co., 108 Cal.App. 290, 291 P. 698; Beene v. Southern Casualty Co., 168 La. 307, 121 So. 876; Home Ins. Co. v. Paul, 128 Okl. 142, 261 P. 927;

other cases, in fact, that the numerical weight of authority is opposed to the position which we take.[15] But the reasoning of those cases is not persuasive. Thus, in a New York case,[16] which is typical of the others, it was so held, in the face of a statute which defines as larceny the taking, using, or operating of an automobile without consent of the owner. The court said: " * * * The very heading of the *new* statute, 'Unauthorized Use of Motor Vehicles,' prefigures an offense that is something less than theft as theft has commonly been known. We read on with a deepening impression of movement from the ancient moorings. Operation of a car without the consent of the owner will be a crime and larceny if it continues for a month or for a day, but so also will it be if it continues for an hour or even a few minutes. *Innovations such as these may persist and become general. In course of time they may sink into common thought and common speech.* They have not done so *yet*. Theft under this contract is theft as common thought and common speech would now image and describe it." [Italics supplied]

There are several answers to this statement: (1) The rule for construction of insurance contracts previously stated, deliberately weights the scale in favor of the insured and against the insurer who selected the word. If there is a choice of construction between a legal concept which favors the insurer and a nonlegal concept which favors the insured, the latter is the one to be followed. It would be strange, indeed, then to say that if a nonlegal concept favors the insurer and a legal concept favors the insured the legal concept will be disregarded. The rule is that the insured is entitled to the construction most favorable to him, if the word is reasonably susceptible of two constructions. (2) The legislature which enacted the law is in much closer touch with common speech and common thought than are judges, who are more concerned with deepening impressions of movements from the ancient moorings.[17] (3) Assuming that it may have been an innova-

---

Simpson v. Palmetto Fire Ins. Co., 145 S. C. 405, 143 S.E. 184; Federal Ins. Co. v. Hiter, 164 Ky. 743, 176 S.W. 210, L.R.A. 1915E, 575.

[15] Kovero v. Hudson Ins. Co., 192 Minn. 10, 255 N.W. 93; Seither v. Pennsylvania Manufacturers' Ass'n Casualty Ins. Co., 104 Pa.Super. 260, 159 A. 53; La Motte v. Retail Hardware Mut. Fire Ins. Co., 203 Wis. 41, 233 N.W. 566; Fidelity & Guaranty Fire Corp. v. Ratterman, 262 Ky. 350, 90 S.W.2d 679; Home Ins. Co. v. Trammell, 230 Ala. 278, 160 So. 897; Van Vechten v. American Eagle Fire Ins. Co., 239 N.Y. 303, 146 N.E. 432, 38 A.L.R. 1115; Hartford Fire Ins. Co. v. Wimbish, 12 Ga.App. 712, 78 S.E. 265. See Note, 89 A.L.R. 466.

[16] Van Vechten v. American Eagle Fire Ins. Co., 239 N.Y. 303, 306, 307, 146 N. E. 432, 433, 38 A.L.R. 1115.

[17] In De Long v. Massachusetts Fire & Marine Ins. Co., 142 Misc. 654, 256 N.Y. S. 300, 302, the court had under consideration the same statute that was involved in the Van Vechten case, and said: "At the time of the enactment of the statute defining the unauthorized use of motor vehicles as larceny and stealing, the average individual, typical representative of common thought and speech, did not classify him as a thief. Perhaps this was in a measure due to the use of the loose popular synonym of 'joy rider.' Since that time common-law larceny occupies only a very small proportion of the total steal-

ing and larcenies of motor vehicles. Holdup men only temporarily steal automobiles for use in their robberies. Young men and boys commit burglary solely to indulge in temporary joy rides. Garage keepers and attendants steal them to run errands. Convivial parties openly or secretly held in violation of the National Prohibition Law (27 U.S.C.A.) are often complete only after a ride in a stolen automobile. Such theft, larcenies, and stealing are productive of a great many of the serious injuries and deaths which occur upon the public highways. Former innovations such as these have persisted and become so general as no longer to be innovations. Criminal prosecution and imprisonment for such offenses are constantly detailed in the public press. Surely such innovations have sunk into common thought and common speech. Inquiry from one hundred automobile policyholders would evince one hundred replies that theft under their insurance contract included 'joy riding.' That the insurers continue to use the loose, colloquial, and popular term of theft instead of larceny and stealing which are the proper terms of art as found in the penal statutes may ere long evoke the old-fashioned doctrine of Nellis v. Western Life Indemnity Co., 207 N.Y. 320, 100 N.E. 1119. Other states are tugging at the leash or, more properly, straining at ancient moorings in response to a distinct tidal flow towards substantial justice." This New York Su-

tion to regard such a taking of an automobile as theft, the New York court suggests that it may in course of time persist, become general and sink into common thought and common speech. The District of Columbia law, in effect since 1913, defines such a taking as a felony. Presumably, since the record shows without dispute that Harrison pleaded guilty to this felony, he must have had a felonious intent, and presumably, the lapse of twenty-seven years would be enough for the assumed innovation of 1913 to sink into common thought and common speech. (4) The reasoning of this New York case, and of others so holding, is based upon the theory that in common thought and common speech theft means a taking and carrying away of the property of another with intent permanently to deprive the owner of his property and nothing more. This is at best a legalistic misconception. The common thought and common speech meaning of theft is that which prevails, not among lawyers and judges, but among people, approximately 99 per cent of whom have never heard of this old common-law definition. As Justice Story well said: "If there be any commercial contract which, more than any other, requires the application of sound common sense and practical reasoning in the exposition of it, and in the uniformity of the application of rules to it, it is certainly a policy of insurance; for it deals with the business and interests of common men, who are unused to deal with abstractions and refined distinctions." [18]

As has been pointed out previously, the old common-law definition of larceny has been largely modified by statute as well as by the courts which purport still to apply the common law. The only rule as to felonious intent in larceny to which these statutes and cases can be reconciled, is that the intent of the taker must be to appropriate the property to a use inconsistent with the property rights of the person from whom it is taken. Harrison did have such an intent, and pleaded guilty to a crime requiring such an intent. But the courts in some states—presumably applying a rule of construction which favors the insured—have required a showing of intent permanently to deprive the owner of his property, a greater showing than is required to prove larceny itself. And they do this under the pretense that common thought and common speech requires such a result.

To permit such a result would be to permit insurance companies, by using the word theft, to evade liability in many cases in which, under prevailing laws, they would be liable if they had used the word larceny. This is certainly not the result intended by the applicable rule.

It is not necessary to go farther. It is apparent that the word theft is reasonably susceptible of the construction contended for by appellee and given by the lower court.

Affirmed.

---

preme Court decision was reversed by the appellate division in a 3-2 decision in De Long v. Massachusetts Fire & Marine Ins. Co., 238 App.Div. 760, 262 N.Y.S. 165, because the evidence upon which the jury made its determination concerning the common thought and common speech meaning of theft was insufficient, and not because its determination was error as a matter of law.

But cf. Merl v. Standard Ins. Co., 173 Misc. 230, 17 N.Y.S.2d 709.

[18] Peters v. Warren Ins. Co., 14 Pet. 99, 109; 10 L.Ed. 371.

Cf. Eirich v. State Mutual Life Assur. Co., 127 Conn. 252, 16 A.2d 351, 352. The insurance policy exempted the insurer from liability for "death resulting * * * from poisoning." The insured died from poison unintentionally consumed while eating a meal in a restaurant. The court said that the death "was beyond question caused by poisoning within the common and ordinary meaning of that word. It was with this meaning that the word 'poisoning' in the exemption was used by the parties to this contract of insurance."