BELLAND

v.

AMERICAN AUTOMOBILE INS. CO. et al.

No. 1385.

Municipal Court of Appeals for the
District of Columbia.

Argued Nov. 9, 1953.

Decided Dec. 28, 1953.

C. Frank Reifsnyder, Washington, D. C., George D. Horning, Jr., Washington, D. C., on the brief, for appellant.

Thomas S. Jackson, Washington, D. C., Louis M. Denit and Martin R. Fain, Washington, D. C., on the brief, for appellee American Automobile Ins. Co.

James A. Crooks, Washington, D. C., for appellee Universal Carloading & Distributing Co.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Cameron H. Belland shipped seven cartons of personal effects from Los Angeles, California, to Arlington, Virginia. After certain occurrences to which we shall refer later, and when the shipment was ultimately delivered to him, one of the cartons was missing. The carrier reported it to the police as stolen. Mr. Belland's wife, Lenore M. Belland, sued the insurance company on its "Residence and Outside Theft" policy for the value of the contents of the stolen carton. She made no claim on the carrier, Universal Carloading and Distributing Company, but the insurance company caused the carrier to be joined in the action as third-party defendant. Though the case was tried by jury, counsel stipulated that the jury was to consider only the question of value and that "all other issues in case, including issues of fact together with question of liability, if any, are to be decided by the trial judge." In a written memorandum the trial judge ruled that plaintiff's loss was not covered by the insurance policy and ordered judgment for both defendants. That decision is brought here for review.

Appellant contends that the insurance company is liable under the language of the policy (Coverage A) which covers "loss by theft from the premises or, if the property has been placed therein by the in-sured for safekeeping, from within any * * * public warehouse * * *." The question of the applicability and construction of the quoted clause arises because of the following circumstances. The apartment the Bellands hoped to occupy in Arlington, Virginia, and to which the shipment had been directed was not available to them. Universal attempted delivery there but failed and then mailed notice of nondelivery to Mr. Belland with a request for new delivery instructions. He responded by telephone and asked Universal to store the shipment temporarily; and Universal agreed to store it in their terminal in Washington for an additional charge. Some seven weeks later the delivery was made to Mr. Belland's new address in Virginia, and the shipment was short one carton. The question arises whether, while being held by Universal for final delivery instructions, the goods were in a "public warehouse." Appellant cites and asks us to adopt a dictionary definition of the term. We think, however, that in determining the meaning of the policy we must apply the established legal principle of giving words "the meaning which common speech imports." Pennsylvania Indemnity Fire Corp. v. Aldridge, 73 App.D.C. 161, 117 F.2d 774, 775, 133 A.L.R. 914. Where there is any fair doubt as to the meaning of words in a policy it will, of course, be resolved against the insurer. But ambiguities will not be sought out, and if the language has but one clear meaning that meaning will be adopted whether favorable to the insured or not. Capital City Life Ins. Co. v. Saunders, D.C.Mun.App., 65 A.2d 588, 589. That being so, we think that a reasonable definition and one in accord with the common usage of the words is that which is set out in 67 C.J., Warehousemen and Safe Depositaries, § 3, p. 443: "A 'public warehouse' is a place that is held out to the public as being one where any member of the public, who is willing to pay the regular charges, may store his goods. * * *" The plain and uncontradicted evidence was that Universal was not operating a public warehouse; that although goods are occasionally stored there such goods were always such as had come into their custody for purposes of carriage, either prior to or

after storage; and that any storing by Universal is entirely incidental to its business as a freight forwarder. Universal does not accept for storage goods of the general public or of owners other than those initially delivered to Universal for transportation. We think, therefore, that we would have to read into the policy nonexistent ambiguities, and distort its plain meaning, in order to adopt the contention of appellant. We must rule that the clause referred to does not cover this situation and that the terminal of Universal was not a public warehouse.

By another clause in the policy (Coverage B) the insurer bound itself to pay for "theft away from the premises," but with these exclusionary words: "This coverage does not apply to: * * * (d) loss of property while * * * in the charge of any carrier for hire. * * *"

■ Were the goods in charge of a carrier for hire? Universal is admittedly a freight forwarder. The customary function and status of such forwarders have been discussed in two recent Supreme Court decisions. United States v. Chicago Heights Trucking Co., 310 U.S. 344, 60 S. Ct. 931, 84 L.Ed. 1243; Chicago, M., St. P. & Pac. R. Co. v. Acme Fast Freight, 336 U.S. 465, 69 S.Ct. 692, 93 L.Ed. 817. In the second of these two cases, 336 U.S. at page 467, 69 S.Ct. at page 693, Chief Justice Vinson pointed out: "The forwarder thus has some of the characteristics of both carrier and shipper. In its relations with its customers, a forwarder is subjected by the Act to many of the requirements and regulations applicable to common carriers * * *. In its relations with these carriers, however, the status of the forwarder is still that of shipper." The Act referred to in the above quotation is the Interstate Commerce Act, as amended by the 1942 Freight Forwarders Act.[1] That amendment defines a freight forwarder as "any person which * * * holds itself out to the general public as a common carrier to

transport or provide transportation of property * * *." Such forwarders are, by the Act, made liable to their customers.[2] And such liability is, of course, that of a carrier: to transport the customer's goods safely and without loss to point of destination. The reason for excluding liability under the policy, while goods were in the hands of a common carrier or carrier for hire was because of the increased hazards while in course of shipment. The contract with Universal cast upon it the duty of safe transportation, and there seems no escaping the conclusion that it was for the purpose of this dispute a carrier for hire.

In addition to arguing that Universal was a freight forwarder, and nothing more, appellant also makes the contention that Universal became a warehouseman while holding the goods for new and final delivery instructions. But that designation, even if we assume it to be accurate, would more directly concern the measure of liability than a change in the legal status of the carrier. (A carrier's liability is that of an insurer, while a warehouseman is usually a mere bailee. General American Tr. Corp. v. Indiana Harbor Belt R. Co., 7 Cir., 191 F.2d 865, 873, certiorari denied, 343 U.S. 905, 72 S.Ct. 636, 96 L.Ed. 1324.) In this connection we refer to the language of Justice Brandeis in Western Transit Co. v. A. C. Leslie & Co., 242 U.S. 448, 453, 37 S.Ct. 133, 135, 61 L.Ed. 423: "The provisions of the bill of lading govern even where the goods are allowed to remain in the carrier's warehouse after giving receipt therefor and payment of freight. The carrier and the shipper can make no alteration of the terms upon which goods are held under a tariff, until there has been an actual delivery of the goods to the consignee." Cf. General American Tr. Corp. v. Indiana Harbor Belt R. Co., supra. Thus, as we have indicated above, the original contract of transportation remained in force until the goods were delivered to the consignee.

1. Part IV of the Interstate Commerce Act, c. 318, § 1, 56 Stat. 284 (1942), as amended, c. 1140, § 1, 64 Stat. 1113 (1950), 49 U.S.C.A. § 1002.

2. They have also been held liable, independently of statute. Slutzkin v. Gerhard & Hey, 199 App.Div. 5, 191 N.Y.S. 104.

We realize that in the past there has been some misunderstanding as to the exact status of freight forwarders; but amendments to the I.C.C. Act, cited above, and the decisions we have cited have clarified the situation. We think we must hold that at least as to Belland, and within the meaning of the policy provisions, the loss of appellant's property took place while "in the charge of any carrier for hire." Additional support for our ruling will be found in Heath v. Judson Freight Forwarding Co., 47 Cal. App. 426, 190 P. 839; Highway Freight Forwarding Co. v. Public Serv. Comm., 108 Pa.Super. 178, 164 A. 835.

What we have said makes it unnecessary to consider or decide another question raised in the briefs: whether a thirty-day in-transit provision in the policy had expired. There was no evidence (and no separate finding) as to whether the carton was lost or stolen from Universal's terminal, or while the shipment was on its final leg from the terminal to the Belland home. Plaintiff was under a duty to prove that the loss occurred in transit in order to recover under the in-transit provision, and the absence of evidence on that point would properly lead to a ruling against her on that policy provision.

Our decision also disposes of the claim of the insurance company against the carrier, Universal Carloading and Distributing Company, third-party defendant below.

Judgments affirmed.