**Emma L. NICHOLS, Appellant,**

v.

**NORTH CAROLINA MUTUAL LIFE INSURANCE COMPANY, Inc., Appellee.**

No. 2560.

Municipal Court of Appeals for the District of Columbia.

Argued May 23, 1960.

Decided July 6, 1960.

6. Code 1951, § 21–101 et seq.

7. Code 1951, § 11–758 (Supp. VIII) et seq.

Noble McCartney, Washington, D. C., for appellant.

Frank D. Reeves, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

The sole question presented on this appeal is whether the trial court erred in ruling as a matter of law that the word "treatment," as used in the "Limitations and Exceptions" clause of a hospitalization insurance policy, embraced within its meaning a surgical operation of the kind performed on plaintiff-appellant.

The undisputed facts disclosed that the policy in question was issued to appellant on February 23, 1959, and that three months later she entered the Washington Hospital Center where she underwent surgery for the removal of multiple tumors. Subsequently, a claim for the expenses thus incurred was submitted to appellee, which denied liability on the basis of the following exclusionary provision contained in the policy:

"1. This Policy shall not cover and no indemnity will be paid hereunder for accident or sickness resulting from any of the following causes:

\*   \*   \*   \*   \*   \*

"(f) Treatment of \* \* \* any growth or tumor where hospital confinement commences before this Policy has been in force at least one year."

Thereupon, appellant instituted this suit. Appellee, after filing an answer, moved for summary judgment. In contesting the motion, appellant offered affidavits supporting the restrictive interpretation which she urges this court to adopt and also requested that her opposition be treated as a cross motion for summary judgment. Appellant concedes that the term "treatment" applies to medication or, as she declares, "only the medical care of an existing condition," but she contended below, and argues here, that the term does not include surgery. With the order granting appellee's motion for summary judgment, the trial judge filed a comprehensive memorandum which in substance construed "treatment" as a broad, unambiguous term incorporating all the steps taken, including surgery, to promote the cure of any injury or disease. We concur with the determination of the trial court.

While no case from this jurisdiction has come to our attention which would afford assistance in disposing of this narrow issue, it is our understanding and belief that the term "treatment" has a broad and settled meaning, including within its scope those measures reasonably deemed necessary to effect a cure of, or provide relief from, an injury or disease. Thus, if the means utilized by a physician are intended to accomplish such a purpose, the means so employed would constitute "treatment." We believe that reliable authority supports this construction. In Petty v. Sloan, the Tennessee Supreme Court was confronted with a similar problem when called upon to construe this term in the context of a lease contract between a group of doctors and a county hospital committee. As part of the consideration for leasing the premises, the doctors agreed to make the hos-

pital facilities available to all doctors "for the treatment of their patients," and it was contended by the plaintiffs, third-party beneficiaries under the contract, that the term "treatment" clearly embraced surgical operations. In so holding, the court said:

"We in considering the contract find that it does not contain technical expressions. The contract, it seems to us is expressed in non-technical language and subject to be, and capable of being, read and understood by the citizens and taxpayers of the County. This being true it certainly seems that in construing the meaning of this language that the word 'treatment' should be given its ordinary meaning. The Alabama Courts have held that the word 'treatment' in common parlance and often in law is a broad term covering all the steps taken to effect a cure of an injury or disease. Hester v. Ford, 221 Ala. 592, 130 So. 203. This seems a reasonable statement for one to apply to the term as herein used. * * *"[1]

Similarly, the New York courts have attached the same interpretation to the term as used in insurance policies.[2]

This court is well aware of the recognized principle of construction that the doubtful or ambiguous meaning of words contained in a policy will be construed in favor of the insured; however, as previously explained, that is not the situation facing the court in the instant case. General usage and judicial determination have applied a commonly accepted meaning to the term "treatment." Had the parties contemplated a different meaning, it is reasonable to assume that they would have so indicated by the insertion of suitable modifying language. In the absence of such, appellant cannot now, by

supporting affidavits, circumscribe the plain meaning of this word and create ambiguity where none in fact exists. As this court pointed out in the Belland case,

"* * * We think, however, that in determining the meaning of the policy we must apply the established legal principle of giving words 'the meaning which common speech imports.' Pennsylvania Indemnity Fire Corp. v. Aldridge, 73 App.D.C. 161, 117 F.2d 774, 775, 133 A.L.R. 914. Where there is any fair doubt as to the meaning of words in a policy it will, of course, be resolved against the insurer. But ambiguities will not be sought out, and if the language has but one clear meaning that meaning will be adopted whether favorable to the insured or not. * * *"[3]

Accordingly, the ruling of the trial court is

Affirmed.

---

1. Petty v. Sloan, 1955, 197 Tenn. 630, 277 S.W.2d 355, 360.

2. Kirschner v. Equitable Life Assur. Soc. of United States, 1935, 157 Misc. 635, 284 N.Y.S. 506, 510.

3. Belland v. American Automobile Ins. Co., D.C.Mun.App.1953, 101 A.2d 517, 518.